STATE ex rel. SMITH v. SMITH, et al., Judges.

In Banc, December 5, 1899.

1. **Appeals:** CONSTITUTIONAL QUESTION: POLICEMEN IN KANSAS CITY. If in the determination of the question of whether or not the Board of Police Commissioners of Kansas City had authority under the charter of the city or the general law of the State to remove a policeman, a construction of the Constitution is necessarily involved, the appeal is to the Supreme Court.

2. ——: ——: ——: MANDAMUS. And where a case involving such constitutional question is erroneously appealed to a court of appeals, and it refuses to certify the case to the Supreme Court upon proper application, this court will by mandamus compel it to transfer the case.

*Mandamus.*

PEREMPTORY WRIT AWARDED.

WALLACE & WALLACE for relator.

The Kansas City Court of Appeals has no jurisdiction of these cases for the reasons: First, the title of the relators to the offices, to the possession and emoluments of which they sought to be restored, is involved in the said suits, and these offices are offices under this State; and second, because the question of the power of the commissioners to remove the relators from

office was made to depend upon the question whether the charter of Kansas City, adopted under section 16 of article IX. of the Constitution of Missouri, or the act of the Legislature of 1874, creating the Board of Police Commissioners for Kansas City, is in force and governs the rights of the relators; and this is a constitutional question.

R. B. MIDDLEBROOK for respondents.

(1) Relators contend that they are "State officers" within the meaning of section 12, article VI of the Constitution. This point has been ruled otherwise in the following cases: State ex rel. v. Dillon, 90 Mo. 229; State ex rel. v. St. Louis Board of Health, 90 Mo. 169; State ex rel. v. Spencer, 91 Mo. 206; State ex rel. v. Higgins, 144 Mo. 410. (2) It is claimed that "title to office under this State" is involved, as that language is used in section 12, article VI of State Constitution. This contention is untenable because there never was, and is not now, any contestant disputing the title of the relators to the positions of patrolmen on the Kansas City police force. And so title to office is not involved. Rothrock v. Lumber Co., 146 Mo. 57; Price v. Blankenship, 144 Mo. 208; Gay v. Building and Loan Ass'n, 149 Mo. 606; Herman v. Wade, 141 Mo. 598; Edwards v. Railroad, 148 Mo. 513. (3) But, it is now said by relators that a constitutional question was involved and that a "case involving the construction of the Constitution of the United States, or of the State," is before the court for determination. In order to present this objection here, the relators must show that it was presented in the circuit court or court of appeals in the following manner: "It should, at least, be fairly and directly presented by some of the methods recognized by the practice and procedure of the court." Hulett v. Railroad, 145 Mo. 35; Ash v. City of Independence, 145 Mo. 120; Trust Co. v. Donnell, 145 Mo. 431; Vaughn v. Railroad, 145 Mo. 57;

Parlin & Orendorff Co. v. Hord, 145 Mo. 117; Kirkwood v. Johnson, 148 Mo. 632.

VALLIANT, J.—This is an application for mandamus to require the judges of the Kansas City Court of Appeals to transfer a cause pending in that court to the Supreme Court.

The cause sought to be transferred is one which began in the circuit court of Jackson county, wherein the relator sued for a mandamus against the Board of Police Commissioners of Kansas City to compel them to re-instate him in the office of patrolman of the police force, from which he averred they had unlawfully dismissed him, and to draw a warrant in his favor for his salary. Upon the trial in the circuit court the judgment was in favor of the relator, and the police commis-- sioners appealed to the Kansas City Court of Appeals, which reversed the judgment of the circuit court. Relator filed motions for rehearing and to transfer the cause to this court, both of which were overruled, and then he made this applica- tion for a mandamus to compel the transfer.

As grounds upon which this court has jurisdiction the relator contends that the title to an office under this State is in- volved, that the relator is a State officer, and that a constitu- tional question is involved.

Briefly stated the facts are as follows: On May 4, 1895, the Board of Police Commissioners appointed relator a patrol- man for a term beginning on that day and to end on May 4, 1898; he served as such officer until August 22, 1896, when the board, in order to bring the police pay-roll within the appropriation made for it by the city council, resolved to reduce the force, and for that reason discharged three ser- geants and thirteen patrolmen, the relator being one of the latter.

The following extract from the opinion of the Kansas City Court of Appeals states the point in dispute very clearly:

"The ground on which relator's application for the writ is based, is, that the police commissioners discharged him with-

out right or authority in law, in that the discharge was made without notice to him and without giving him a hearing. The case concedes that defendant was discharged without complaint being made, charges preferred, or notice or hearing given. The answer does not deny this, but alleges that the commissioners decided to reduce the number of the police force, and thereupon made and entered an order that three sergeants and thirteen patrolmen be discharged, the relator being among the latter. Relator claims that the commissioners are governed and controlled by the charter of Kansas City; while the commissioners claim that, at least in the respect here considered, their authority is found in the act creating and establishing a board of police commissioners for Kansas City."

Section 22, article II of the city charter, provides that after policemen have served satisfactorily for a probationary term they may be appointed for a term of three years and "if complaint be made against them, they shall be subject to removal only for cause, after hearing by the board."

But under the act of the General Assembly of 1874 (Laws 1874, 327) creating the Board of Police Commissioners for Kansas City and establishing its police system, it is provided that the "said commissioners may reduce the present or any future number of police, as experience may warrant."

Quoting again from the opinion of the Kansas City Court of Appeals: "Conceding that the city charter is the governing law, granting, limiting and controlling the power of the commissioners as regards the discharge of policemen, then the discharge of the relator without complaint or charges preferred against him, and without a hearing being given him, was wrongful and unauthorized, since the charter only provides for a discharge after a hearing. [State ex inf. v. Vallins, 140 Mo. 523.] But conceding that the law of 1874 is the controlling factor, then, we are of the opinion that for the purpose of reducing the number of the police force, the com-

missioners may, in their discretion, discharge the number decided upon without the formality of notice or a hearing. Such is the reading of the law."

The case as thus stated is reduced to this question: Which law is to govern, the Act of the Legislature of 1874, or the Kansas City charter of 1889?

This charter was adopted pursuant to the provisions of section 16, article IX of the Constitution, which authorizes a city of more than one hundred thousand inhabitants to "frame a charter for its own government, consistent with and subject to the Constitution and laws of this State."

On this point the Kansas City Court of Appeals in their opinion in this case say: "In matters of purely municipal concern, the provisions of the charter supersede the provisions of the general law on the same subject existing when the charter was adopted, when not inconsistent or out of harmony with the general law. . . . . While much important governmental power concerning matters of strictly municipal or local concern may be legally embodied in the charter, yet the charter must remain in subjection to the general law." All of which is the interpretation which that learned court places on the provision of the Constitution above quoted, and through that interpretation and reasoning along that line it reached the conclusion that, as between the charter provision in question and the Act of 1874, the latter must prevail. It is not for us now to say and we do not say whether or not the court was correct in its conclusion, but we refer to it to show that it could only reach a conclusion through a construction of the Constitution. Undoubtedly there is involved in this case a construction of the Constitution, and as this is decisive of the case there is no necessity for considering the other points.

The peremptory writ is awarded. GANTT, C. J., BRACE, ROBINSON and MARSHALL, JJ., concur; BURGESS, J., dissents; SHERWOOD, J., absent.