COMMERCE TRUST COMPANY, Respondent, v. SYNDICATE LOT COMPANY and JOSEPH JOHNSON, Appellant.

Kansas City Court of Appeals. June 13, 1921.

1. **TAXES: Municipal Corporations: Words ''Special Taxes or Assessments'' Construed: Ordinarily Word ''Tax'' Does not Include Local Assessments.** Ordinarily, the words, "tax or taxes," does not include local assessments unless there be something in the language where the word is found to indicate such an intention.

2. ———: ———: **Words ''Special Taxes'' as Used in Constitutional Provision do not Include Local Assessments.** Even the words "special taxes" do not include local assessments as those words are used in section 11, article 10, of the Constitution of this State.

3. ———: ———: **Definition of Word ''Assessment.''** The word "assessment" is used in more than one sense, and as ordinarily understood, consists in the two processes of listing the persons property, etc., to be taxed, and of estimating the sums which are to be the guide in an apportionment of the tax between them.

4. ———: Liens: **Lien of Special Tax for Local Improvements Inferior to that for General Tax.** The lien of special tax bills for local improvements is inferior to that for general taxes where there is no provision to the contrary.

5. **MUNICIPAL CORPORATIONS: Liens: Lien of City for Taxes upon Real Estate Subject to Lien of Holder of Prior Tax Bills Issued by City for Local Improvements.** Under City Charter 1909, p. 239, art. 5, sec. 39, the lien of the city of Kansas City, for taxes upon real property, is subject to the lien of the holder of prior tax bills issued by the city in payment of local improvements.

Commerce Trust Co. v. Lot Co. and Johnson.

6. **COURTS: Jurisdiction: Constitutional Question: The Construction of a Provision of the Constitution Involves a Constitutional Question and not an Application Thereof.** The point that the making of a lien of tax bills a superior lien to that of the city for general taxes would be contrary to the general scheme of collecting and assessing land taxes as shown by the Constitution and Statutes of the State, and would be inoperative for that reason, involves a constitutional question for the decision of which this court has no jurisdiction, the question being the construction section 16, of article 9, of the Constitution.

7. **APPEAL AND ERROR: Constitutional Question not Raised in Trial Court Considered Waived on Appeal.** Where constitutional question was not raised in trial court, it must be considered as waived on appeal.

ON REHEARING.

1. **CONSTITUTIONAL QUESTION: Agreed Statement of Facts: Agreed Statement of Facts Does not Obviate the Necessity of Raising Constitutional Question at Earliest Possible Moment.** Where appellant in the appellate court attacked the validity as well as meaning of Charter clause (sec. 39, art. 5, Charter of Kansas City), but case pleaded was on ordinary proceeding to enforce the lien of tax bills, and the answer of appellant did not invoke any specific provision of the Constitution claimed to have been violated, and on which violation he relied for a defense, the case being submitted on an agreed statement of facts which merely took the place of evidence in the case, such agreed statement did not obviate the necessity of invoking the Constitution, if a constitutional question was involved in appellants contention, that his title was superior to the lien of the tax bills.

2. **LIENS: Taxes: In Absence of Statute, a Lien for General Taxes Takes Precedence Over Lien for Special Assessment.** In the absence of statutory provision to the contrary, it is generally held that a lien for general taxes takes precedence over a lien for special assessments.

3. **———: ———: Municipal Corporations: City has Same Lien for General Taxes as the State.** Under section 12964, Revised Statutes 1919, a lien is created on all real property for city taxes, "the same as for State and county taxes," and section 12965, Revised Statutes 1919, gives the city the same lien for its general taxes as the State has, the general city taxes upon real estate under section 19, of article 5, of Charter of Kansas City, being a perpetual lien thereon against all persons.

4. ———: ———: **Lien of State for Taxes Paramount to all Other Liens.** The lien of the State for its taxes is paramount to all other liens, whether prior or subsequent.

5. **CONSTITUTIONAL QUESTION: Where a Charter Provision has the Dignity and Rank of a Statute, the Question of its Constitutionality is Undoubtedly a Constitutional Question.** The appellant's contention that the charter clause was invalid, does not rest alone on the fact that the statute has given the city the same lien for general taxes as the State, but upon the further fact that the last two lines of section 16, article 9, of the Constitution, provides that the city charter "shall always be in harmony with and subject to the constitution and laws of the State," and, therefore, such contention involves a constitutional question.

6. **MUNICIPAL CORPORATION: Power to Tax: Power to Frame Charter Emanates from the Constitution.** The power to frame charter emanates from the Constitution, and the power of taxation which otherwise is vested exclusively in the Legislature, is also conferred upon the municipality as an essential attribute for the purpose of its existence.

7. **CONSTITUTIONAL QUESTION: Where not Properly Raised, not in the Case.** Where the conclusion reached is not based on a decision of a constitutional question, but founded upon the wording of the Charter, the constitutionality of which was not properly raised, there is no constitutional question in the case.

Appeal from the Circuit Court of Jackson County.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*B. C. Howard* and *Wm. D. Bush* for respondent.

*Roland Hughes* for appellant.

BLAND, J.—This is a suit upon three special tax bills issued by Kansas City. There was a trial by the court without the aid of a jury, resulting in a judgment for the full amount of each tax bill together with interest. The judgment further declared the tax bills a lien on the lots superior to defendants' title. Defendant, Johnson, has appealed.

In his answer defendant, Johnson, claims a superior title to the lien of tax bills. This claim is based on certificates of purchase and a tax deed issued by Kansas City for general taxes for the years 1910, 1911, 1912, 1913, 1914, 1915, 1916, 1917, 1918 and 1919. There is no claim of invalidity made against plaintiff's tax bills or said defendant's certificates of purchase or his tax deed. The only question in controversy is whether the lien of the city for taxes on real estate is subject to the lien of the holder of prior tax bills issued by the city in payment of local improvements. This question involves the construction of article 5, section 39, p. 239, Charter of Kansas City, 1909. This section provides for the execution of a deed by the City Treasurer in pursuance of the sale for delinquent taxes of land in the city; that, after the redemption period of five years has expired, on presentation by the holder of a certificate of purchase the City Treasurer shall execute "to the purchaser, his heirs or assigns, a deed of the real property described in such certificate of purchase, remaining unredeemed, . . . and deliver the same to the grantee, which deed shall vest in the grantee an absolute estate in fee simple in the real property described therein, and shall convey all the right, title and estate of the former owner or owners, free from any and all incumbrances of whatsoever kind or nature, *subject, however, to all unpaid State, county and city taxes, general and special taxes or assessments which are a lien thereon.*" (Italics ours.)

A decision of this question rests upon the construction of the words "special taxes or assessments" as used in this section and article of the Charter. Ordinarily, the words, tax or taxes, do not include local assessments unless there be something in the language where the word is found to indicate such an intention. [8 Words and Phrases, pp. 6873, 6874.] It is held in this State that even the words "special taxes" do not include local assessments as those words are used in section 11, article 10, of the Constitution of this State. [Farrar v. City of St. Louis, 80 Mo. 379; Kansas City v. Bacon, 147 Mo. 259;

Adams v. Lindell, 5 Mo. App. 197; Adams v. Lindell, 72 Mo. 198.] The word "assessment" is used in more than one sense. As ordinarily understood an "assessment consists in the two processes of listing the persons, property, etc., to be taxed, and of estimating the sums which are to be the guide in an apportionment of the tax between them." [1 Bouvier's Law Dictionary, p. 256 (3 Revision); State ex rel, Allen v. Ry., 116 Mo. 15, 23.] The lien of special tax bills for local improvements is inferior to that for general taxes where there is no provision to the contrary. [Missouri Real Estate and Loan Co. v. Burri, 216 S. W. 570.] So it is necessary for us to go to the other provisions of the charter to ascertain what is meant by the words "special taxes or assessments" as used in section 39 of article 5 of the charter.

By the use of the word "assessments" in connection with the words "special taxes" the farmers of the charter must have meant something more than "taxes" as that word is usually construed to mean. In fact, it is clearly indicated in the charter that the words "special taxes or assessments" refer to tax bills. Article 8 of the charter deals with the making of public improvements and the payment therefor. Section 23, pp. 336, 337, of said article provides that all *special tax bills* issued under the charter and all benefit assessments arising out of condemnation and grading cases "shall be considered for the purpose of collecting or receiving payment thereof, as *special taxes* against any lot or parcel of land against which the same may be a lien." (Italics ours.) Section 1, of said article, provides for the issuing of "*special tax bills*" to evidence "*special assessments*" for public improvements. Section 3, of said article, in relation to the improvements specified in said section, provides that the Board of Public Works by resolution "shall state the nature of the improvement and when the same is to be paid for in whole or in part in *special tax bills,* the method of making *assessments* to pay therefor;" that if the Board shall determine that the proposed improvement is not for the public interest to "be made

and paid for, either out of the general fund or by any method of *assessment,* they shall make an order to that effect;" that "when the cost of the whole or any part of the improvement . . . is to be paid by *special tax bills* evidencing *assessments* against lands, such *assessments* shall be made, levied and assessed according to one of the methods in this article prescribed;" and "in *making assessments for special tax bills* to pay for grading or re-grading any street, sidewalk, avenue or public highway, or part thereof, the City Assessor shall . . . cause an *assessment* to be made of the value of all the lands to be charged, etc;" that "the costs of all grading, including the grading of sidewalks, shall be charged as a *special tax* on all lands;" that the Board of Public Works shall make out *special tax bills* therefor and that "the cost of all work on any sidewalk . . . exclusive of the grading of the same, shall be charged as a *special tax* upon the adjoining lands according to the frontage thereof on the sidewalk;" (Italics ours) and shall be paid for by *special tax bills.*

Section 4, of said article, provides that the Board of Public Works shall at the time of accepting any improvement on the part of the city "make and levy an *assessment* against the tracts of land, exclusive of improvements, to be assessed to pay therefor, the aggregate of which *assessments* shall equal the amount of the cost of such work to be paid in *special tax bills,*" Section 7, of said article provides that the Board of Public Works shall in the matter of constructing district sewers, "compute the whole cost thereof, and apportion and charge the same as a *special tax* against the lots of land in the district . . . and shall . . . make out and certify in favor of the contractor or contractors to be paid, *special tax bills* for the amount of the *special tax* against each lot or parcel of land in the district." (Italics ours.)

Section 12, of said article, provides that "all computations, apportionments, or *assessments* required by this article to be made by the Board of Public Works shall be held to be properly made when the same are approved

by said Board.'' Section 14, of said article, provides ''that the Board of Public Works may construct or reconstruct the paying, sidewalks, guttering or curbing, or may maintain and repair the same, or may grade or regrade any portion of a street, avenue, alley or other public highway, within the city, without letting a contract for the same'' and that ''the cost of said work may be assessed according to the method provided in this article applicable to the class of improvement made, and the *assessments* therefor may be made payable as provided'' in the charter when the work is done and completed; that the city ''is authorized to cause the issue of *special tax bills* for such work in favor of Kansas City . . . and may authorize the City Comptroller to sell and assign such *assessments of such special tax bills.*'' (Italics ours.)

Section 22, of said article, provides for the keeping by the City Treasurer of a special tax record showing the owners and the parties interested in the several tracts of land affected and charged with the ''apportionment and *assessment*'' whenever the cost of the work *''is payable in special tax bills;''* that the ''City Treasurer shall, immediately upon the receipt of such apportionment, enter the *assessments* therein contained in appropriate books . . . showing the property assessed, the title and date of approval of the ordinance providing for the improvement for which such *tax bills* are issued.'' (Italics ours.)

Section 26, of said article, provides that whenever any land shall be assessed for special benefits to pay for any public improvement and the land shall be owned by a railroad corporation, ''or any other public or quasi-public corporation, . . . such land shall be assessed and a *special tax bill* issued to evidence the same in the same manner as though the same were the property of a private person, and if the sale of such land to enforce such *assessment* is contrary to the public policy or the laws of this State, then the amount of such *assessment* as may be evidenced by the *special tax bill* shall be paid'' by such corporation. (Italics ours.)

Section 27, of said article, provides where any tax bill issued shall be judged to be void for the reasons named in such section, the "Board of Public Works may, at any time within one year after the original issue of the tax bills, reassess any or all of the tracts of land subject to *assessment* to pay the cost of such improvement, according to the rule of *assessment*, and in the same manner and with the same effect and evidence the same by like *tax bills* as is provided in this article for such *assessments* in the first instance." (Italics ours.)

Section 28, of said article, provides that when the grading or re-grading of any street or highway necessitates an expense of such magnitude as to impose a heavy burden on the land situated in the benefit district, the cost of such work "may be charged as a *special* tax on parcels of land . . . benefited thereby, after deducting the portion of the whole cost, if any, which the city may pay." And that after the final determination of the suit the city may enter into a contract with the successful bidder to whom the work may be let and when the work is completed an estimate of the cost thereof and an apportionment of the same against the various parcels of land within the benefit district shall be made by the Board of Public Works and the provisions of section 3 of said article relating "to the apportionment of *special assessments* and the levy, issue and collection of *special tax bills* as in grading proceedings as in said section specified, shall apply to *special tax bills* issued pursuant to this section, except that said *tax bills* may be made payable in not to exceed ten annuals installments." (Italics ours.)

Section 33, of article 5, being the article under which defendant procured his title to the land upon which the tax bills were issued, contemplates that the purchaser of the land at the delinquent tax sale shall pay tax bills that had been issued against it, for it provides that the purchaser "may pay any special tax or assessment, tax bill, park tax, grading, condemnation or other special benefit levied against such tract by authority of this Charter." It also provides that the City Auditor shall

"endorse upon the certificate of purchase the amount of such . . . special tax or assessment, tax bill, park tax, grading, condemnation or other special benefit."

Section 34, of this article, regarding the right of redemption by the owner of the property, requires the owner to pay the City Treasurer "the amount for which such real property was sold, together with interest thereon at the rate per cent bid per annum from the date of purchase, together with all other taxes, assessments or benefits subsequently paid by the purchaser." If the purchaser at the delinquent tax sale acquired a title free from all liens of tax bills and assessments, there would be no necessity of his paying such tax bills and assessments.

The whole scheme and tenor of the charter is that the words "special taxes" and "assessments" as used in section 39, article 5, mean local benefit assessments and tax bills. We think that, construing the whole charter in regard to tax bills, the words "special taxes or assessments" refer to local improvement assessments or tax bills such as sued on in this case. [Boston Asylum v. Street Commissioners, 180 Mass. 485, 486, 487; Emery v. San Francisco Gas Co., 28 Calif. 345, 362, 363; Taylor v. Palmer, 31 Calif. 240; Howes v. City of Racine, 21 Wis. 521, 522.]

There is nothing in section 9, of article 7, of the Charter, which treats of court proceedings, to indicate otherwise. This section provides "that the several lots or parcels of private property, so assessed to pay compensation by the verdict or report, stand severally charged and be bound for the payment of the respective assessments," and "that the city recover the respective amounts assessed against private property." While the word "assessments" as used in this section does not refer to special tax bills, the wording of section 39, article 5, is, no doubt, broad enough to include such assessments. The same may be said of the "assessment" to be made for repairs of sidewalks, curbs and gutters as provided for in section 15, of article 8, and of section 17, of article 7, which provides that it "shall be the duty of the City

Treasurer to receive the benefit assessments on private property at any time after the conclusion of the proceedings before the issuance of execution." This has reference to proceedings in court. The provision of section 19, article 5, providing that "taxes upon real property are hereby declared a perpetual lien thereon against all persons" must be construed with section 39 of article 5, quoted supra.

The point is made that the making of a lien of tax bills a superior lien to that of the city for general taxes would be contrary to the general scheme of collecting and assessing land taxes as shown by the Constitution and Statutes of the State, and would be inoperative for that reason. Section 16, of article 9, of the Constitution, giving Kansas City power to enact its character, provides that such charter "shall always be in harmony with and subject to the Constitution and Laws of the State." A decision as to whether any provision or provisions of the charter are contary to the general scheme of the State in relation to the same subject-matter involves the construction of said section of the Constitution and not an application thereof and, therefore, involves a constitutional question for the decision of which this court has no jurisdiction. [State ex rel. Smith v. Smith, 152 Mo. 444, 448.] However, no constitutional question was raised in the trial court, therefore, such a constitutional question has been waived and is not in the case. [Sheets v. Ins. Co., 226 Mo. 613, 618, 619.]

The judgment is affirmed. All concur.

ON MOTION FOR REHEARING.

TRIMBLE, P. J.—The tax bills sought to be enforced herein were issued by Kansas City on December 28, 1915, being upon special assessments for local street improvements. Appellant Johnson's title is derived through two tax deeds, executed by the city to him on December 4, 1919, under two sales of the property for general city taxes, one sale being for the taxes of the

years 1910 to 1913 both inclusive, and the other for the taxes of 1914 to 1919 both inclusive, all of which Johnson paid as also the general taxes for the succeeding years. The suit to enforce the tax bills was filed June 24, 1920. The trial court enforced them as a first lien on the property thereby making the lien of the tax bills superior to the title of appellant Johnson. The question is whether Johnson's title, having been obtained from the lien for general city taxes, should be made subordinate to the lien of the tax bills for local street improvements?

The question turns upon the construction and effect to be given that clause in section 39, article 5 of the City Charter, relative to the tax deed to be executed to the purchaser at a sale for delinquent general city taxes which reads as follows:

"Which deed shall vest in the grantee an absolute estate in fee simple in the real property described therein, and shall convey all the right, title and estate of the former owner or owners, free from any and all incumbrances of whatsoever kind or nature, *subject, however, to all unpaid* State, county and city taxes, *general and special taxes or assessments* which are a lien thereon."

One of the contentions of appellant was that the foregoing clause does not refer to nor include special assessments for local street improvements, but has reference only to such taxes and assessments as are levied for special city public purposes, such as those for the establishment of City Parks, a City Market, City Hall, etc., all of which are for a special purpose, and therefore may be denominated special taxes or assessments, and yet they nevertheless partake so far of the nature and importance of general taxes, which are for the support of the city government, as that they could well be made and declared to be taxes of equal rank and validity as those for general city revenue purposes, but which is not accorded to special assessments for local street improvements.

Judge BLAND's opinion, however, construes the above clause of the charter against such contention and holds that the clause does include the latter. Having thus con-

strued the said clause of the charter, the opinion then dismisses the question of the *validity* of said clause, namely, whether such clause conforms to the Constitution and Statutes of the State, by saying that such is a constitutional question which appellant did not raise in time.

Appellant complains of this and says that as the case was submitted on an agreed statement of facts, the question of whether the charter clause conformed to the Constitution and Statutes of the State was in the case from the start; that anyway it is not a question of the construction of the Constitution but of the city charter and whether it is to be made to conform to the State laws or not; and that the need for the invocation of the Constitution did not arise until the opinion above mentioned refused to go into the question on that ground.

There is no question but that appellant in this court attacks the *validity* as well as the *meaning* of the charter clause. But the case as pleaded in the petition was the ordinary proceeding to enforce the lien of the tax bills and the answer of appellant did not invoke the Constitution nor did he "put his finger" on any specific provision thereof claimed to have been violated and on which violation he relied for a defense. The agreed statement of facts, as we understand it, merely took the place of evidence in the case, and did not obviate the necessity of invoking the Constitution, if a constitutional question is involved in the appellant's contention that his title is superior to the lien of the tax bills. We have been cited to no case where an agreed statement of facts obviated the necessity of raising the constitutional question at the earliest possible moment.

In the absence of any statutory provision to the contrary, it is generally held that the lien for general taxes takes precedence over a lien for a special assessment. [Missouri, etc., Co. v. Burri, 216 S. W. 570; Ballard v. Way, 34 Wash. 116, 122; McMillam v. Tacoma, 26 Wash. 358; White v. Knowlton, 84 Minn. 141; White v. Thomas, 91 Minn. 395.] In all of these cases there was no statu-

tory provision to the contrary, and in some of them there were provisions which impliedly authorized such ruling. In Minnesota, since 1905, there is a statute which provides that the lien of a special assessment for a local improvement in cities containing a certain population shall be of *equal rank* with the lien of the State for taxes, and under that statute, the purchaser at the foreclosure of the State's lien for taxes takes the property subject to the lien of the special assessment. [Gould v. St. Paul, 110 Minn. 324.]

In Excelsior Springs v. Henry, 99 Mo. App. 450, this court held that a tax sale in 1897 for the delinquent State and county taxes of 1890 did not affect the lien of a special assessment which attached in 1984.

In Dougherty v. Henarie, 47 Cal. 9, it was held, under a section of the revenue law of that State, that a purchaser at a sale for State and county taxes took the same free from a prior lien a special assessment.

In McCollum v. Uhl, 128 Ind. 304, 308, it was held, without reference to any statute and apparently on general principles, that the lien of the State for taxes is paramount and superior to the lien of an assessment for a ditch, but that as no attempt had been made to foreclose the ditch lien at the time the State's lien was foreclosed, the purchaser took the land subject to the assessment lien.

In Indianapolis v. City Bond Co., 42 Ind. App. 470, it was held that a tax sale and the execution of a deed thereunder did not destroy the lien of a special assessment as the effect of the statute giving an absolute estate in fee simple merely defined the quality of the estate and did not release it from valid liens.

In Harrington v. Valley Savings Bank, 119 Ia. 312, the special assessment became a lien from the commencement of the work and therefore such lien had not attached, and it was held that a purchaser at a sale of land for ordinary taxes took the title free from the lien of a special assessment which had not attached at the time of the sale.

In Fitzgerald v. Sioux City, 125 Ia. 396, it was held that a purchaser at a tax sale took the property free of the lien of certain assessments for street improvements, but in that case the sale was for both city and county taxes including the special assessments and the city accepted its *pro rata* share of the purchase price paid, and could not thereafter claim that this was merely a credit on such taxes.

In the case at bar, the only provision which authorizes the subjection of the title of the purchaser at a general tax sale to the lien of the special improvements, is the charter provision hereinabove quoted. But appellant contends that such provision in invalid; and he urges that the decision of the question whether it is invalid does not involve the decision of a constitutional question, but merely a construction of the charter and whether it conforms to the statutes and laws of the State as interpreted by the Supreme Court. The contention that the charter clause is invalid rests upon the following:

The statute gives the State a lien for all taxes, which shall continue and be enforced until they are fully paid or the land sold therefor. [Sec. 12757, R. S. 1919.] And under section 12964, Revised Statutes 1919, a lien is created on all real property for city taxes "the *same* as for State and county taxes." And section 12965, R. S. 1919, gives the city the *same lien* for its general taxes as the State has; and under section 19 of article 5 of the city charter, general city taxes upon real property are declared to be a perpetual lien thereon against all persons. The lien of the State for its taxes is paramount to all other liens, whether prior or subsequent. [Stafford v. Fizer, 82 Mo. 393; Finkelstein v. Baxter, 114 Mo. 493; Merriwether v. Overly, 228 Mo. 218, 250; Morey, etc., Co. v. St. Louis, etc., Ice Rink Co., 242 Mo. 241, 254; Brown v. Brown, 124 Mo. 79; Williams v. Hudson, 93 Mo. 524; Getchel v. Kleider, 84 Mo. 472; Sec. 12929, R. S. 1919.] Aside from the question of whether, in all of the cases, the "other liens" referred to are merely liens by private contract and not liens

arising from governmental exercise of the taxing power, still there are no cases, of which we are aware, where the Supreme Court said this of two governmental liens in which there was a statutory provision such as the charter clause above referred to. So that appellant's contention that the said charter clause is invalid does not rest alone on the fact that the statutes have given the city the same lien for the general taxes as the State has, but upon the further fact, and in the last analysis, chiefly upon the fact, that the last two lines of section 16, article 9, of the Constitution says the city charter "shall always be in harmony with and subject to the Constitution and laws of the State." In other words, the ground upon which appellant claims the charter clause is invalid is that it violates this provision of the Constitution, and we are asked to declare its invalidity on that ground. We think a decision of that matter involves a constitutional question. If the aforesaid charter clause were a *statute*, the question of its constitutionality would undoubtedly be a constitutional question. And it would seem that a provision of the *charter* would have in this regard, at least the dignity and rank of a *statute*. For the power to frame the charter emanates from the Constitution, and the power of taxation, which otherwise is vested exclusively in the Legislature, is also conferred upon the municipality as an essential attribute for the purpose of its existence. [United States v. New Orleans, 98 U. S. 381, 395.] The Legislature has given the municipality the same lien for its taxes as the State has for its own taxes, but, so far as we are aware, it has never forbidden the city if it chooses, through its charter, to subordinate the title of a purchaser, at a sale of land for its general city taxes, to the lien of special improvements assessed at the time of such purchase. And the only provision where it is claimed such power is denied is in the Constitution. So that, manifestly, the question of whether the charter clause is invalid, is a constitutional question. [State ex rel. v. Smith, 152 Mo. 444, 448.] But as appellant did not choose to raise it in any man-

ner in his answer, it is not in the case. [Sheetz v. Iowa State Ins. Co., 226 Mo. 613, 618.]

As to the point that there was no constitutional question in the case until Judge BLAND's opinion created that situation, and, therefore, appellant had no need to raise a constitutional question until the opinion did, we desire to say that the precedence of the lien of the tax bills over defendant's title was denied and attacked from the start, but no constitutional point was raised, as is required before it is properly in the case. The decision or conclusion reached under Judge BLAND's opinion, was not based on a decision of such constitutional question. It was founded upon the wording of the charter, and its constitutionality not being properly raised, no such question was in the case. The decision is not like that referred to in the case of State ex rel. v. Smith, 152 Mo. 444, for there the decision of the Court of Appeals referred to was reached by the Court of Appeals deciding a constitutional question. Of course it had no jurisdiction to do this, and since its conclusion could be reached only by the decision of a constitutional question, the case should have been certified to the Supreme Court whether the constitutional question had been raised by the litigants or not. But that is not the case at bar, and since the constitutional question was not raised, it is not in the case. This answers the contention that the cause should be transferred to the Supreme Court, for the Supreme Court will not consider the constitutionality of a statute where the question is not raised on the record as prescribed by the Constitution. [Holland v. De Priest, 130 Mo. 89.]

It follows from what has been said that the motion for rehearing and also the motion to transfer should be overruled. And it is so ordered. The other judges concur.