# WESTERN BEVERAGE CO. OF PROVO, UTAH, v. HANSEN et ux.

No. 6124.   Decided Dec. 11, 1939.   (96 P. 2d 1105.)

Rehearing Denied, March 14, 1940.

334

*T. A. Hunt,* of Richfield, for appellants.

*Gerald Irvine,* of Salt Lake City, *Leon Fonnesbeck,* of Logan, and *Alfred Klein,* of Salt Lake City, for defendants.

*Ferdinand Erickson,* of Richfield, for respondent.

MOFFAT, Chief Justice.

The Western Beverage Company brought an action to quiet title to the North half of Lot 2, Block 7, Plat C, Richfield Townsite Survey in Sevier County, Utah. Plaintiff alleges ownership. Defendant denies plaintiff's ownership and claims The City of Richfield is owner of the lot in question.

The record is brief and uncertain. Appellant has stated the issue. No exception to the statement made is taken. In the words of the appellant, the issue is:

"That after the lien for special improvements had accrued there was duly levied a general tax against said property and that all the proceedings were duly and legally taken to authorize Sevier County to sell the same for delinquent taxes and that the respondent became the purchaser of the tax title from Sevier County * * * that the only question to be presented to the court is whether or not the sale of the property by the county for general taxes extinguishes the lien of The City of Richfield for its special improvement taxes."

When real estate is sold for taxes, after published notice of delinquency, the county treasurer is required to make out and deliver to the county a certificate of sale. Revised Stat-

utes of Utah 1933, Section 80-10-34. Whether redeemed before the time for redemption has expired ■ or "Sold for taxes at private sale," as provided by statute, R. S. U. 1933, Sec. 80-10-36, subsequent taxes must be assessed. While the certificate of sale is held by the county, the treasurer shall not sell for taxes the so assessed property covered by the tax sale certificate, until the time for redemption, under the previous sale, shall have expired. R. S. U. 1933, Sec. 80-10-40. If any property sold to the county and not assigned is not redeemed after the filing of the tax sale record by the recorder, and after the expiration of the redemption period, the county auditor shall make out a deed conveying to the county all such property. R. S. U. 1933, Sec. 80-10-66.

Some argue title passes at the time of the sale for delinquent taxes "subject to redemption." Some that such "sale" lays the foundation for the beginning of the running of the statute of limitations or the period of "redemption" upon the expiration of which time the title of the ■ owner against whom the tax was assessed is extinguished or the right to redeem, reacquire or recover title is lost. In either case, when the auditor's deed is executed and delivered, under certain circumstances, all rights of redemption are extinguished. Under different circumstances, such rights may not be extinguished until the "May Sale." In any event, the tax lien attaches from the date of levy as fixed by the statute. The processes following are matters pertaining to the ultimate maturity of the lien ending in complete transfer of title or the extinguishment of the lien by payment or conformance to requirements necessary to extinguish the lien so attached.

The answer to the question here involved depends upon the construction to be given to Sec. 15-7-48, R. S. U. 1933. The part of the section relating to that question reads:

"Special assessments made and levied to defray the cost and expense of any work or service contemplated by the provisions of this article, and the cost of collection thereof, shall constitute a lien upon

and against the property upon which such assessment is made and levied from and after the date upon which the ordinance levying such assessment becomes effective, *which lien shall be superior* to the lien of any mortgage or other encumbrance, whether prior in time or not, *except the lien of general taxes,* and such lien shall continue until the tax is *paid notwithstanding any sale of the property for or on account of a general or special tax.*" (Italics added.)

The statute provides for superiority of the general tax lien when it is said "which lien [special assessment lien] shall be superior" to other liens "except the lien of general taxes."

The last clause of the section then provides that the special assessment lien continues against the owner "until the tax is paid notwithstanding any sale of the property for or on account of a general or special tax"; but such continuance does not prevent the county or a purchaser other than a redemptioner acquiring good title from the county in pursuance of the maturity of the general tax lien and transfer of title. The lien continues against the owner and his rights in the property; but when the superior general tax lien is made effective in extinguishing the owner's title, one taking title in pursuance of the foreclosure of such superior lien secures a good title.

Had the statute read, "the special assessment *'lien shall be superior* to the lien of any mortgage or other incumbrance whether prior in time or not * * * *and such lien* shall continue *until the tax is paid notwithstanding any sale* of the property for or on account of a general or special tax' " there would have been no difficulty, in so far as language goes, in concluding that the intention was to establish the superiority of the special assessment lien. This statement is subject to what we further say about *"lien."*

On the other hand, had the statute read, "the special assessment 'lien *shall be superior* to the lien of any mortgage or other encumbrance whether prior in time or not, *except the lien of* general taxes,' " no one would deny the superiority of the general tax lien.

Skeletonized and put into juxtaposition, we have this:

"Special assessments * * * shall constitute a lien * * * which lien shall be superior to any lien or other encumbrances * * * except the lien of general taxes, and such lien shall continue until the tax is paid *notwithstanding any sale* * * * on account of a general or special tax."

If the provisions of the statute can be harmonized, it is our duty to harmonize them. *University of Utah* v. *Richards,* 20 Utah 457, 59 P. 96, 77 Am. St. Rep. 928; *Lawson* v. *Tripp,* 34 Utah 28, 95 P. 520; *Nelden* v. *Clark,* 20 Utah 382, 59 P. 524, 77 Am. St. Rep. 917.

All provisions must be given effect in spite of apparent conflict if it is possible to do so. *Buckle* v. *Ogden Furniture & Carpet Co.,* 61 Utah 559, 216 P. 684.

"Differences of time are to be disregarded in construing a code, if by disregarding them, and looking at the work as a whole, harmony can thereby be produced; but if this proves impossible, if, after exhausting every scheme of reconciliation, there still remains a palpable and irrepressible conflict, we are compelled, in the absence of any thing else indicative of the legislative will, to determine it by adopting its latest declaration." *Gibbons* v. *Brittenum,* 56 Miss. 232.

Where the first provision of a statute conforms to the obvious policy and intent of the legislature, it is not rendered inoperative by inconsistent provisions in the later provision which do not conform to that policy and intent. In such case, the later provision is nugatory and will be disregarded. 6 Am. & Eng. Ann. Cas., note p. 860; *State ex rel. Patterson* v. *Bates,* 96 Minn. 110, 104 N. W. 709, 113 Am. St. Rep. 612; *McCormick* v. *Village of West Duluth et al.,* 47 Minn. 272, 50 N. W. 128.

If the one interpretation is a more practical solution and gives effect to fundamentals, not present in the other, then that solution should be accepted. The legislative intent is controlling and in the end it is the legislative intent we strive to make effective.

It has been suggested that:

"There can be no doubt that unless the legislature plainly specifies otherwise, the county, either at the expiration of four years from delinquency, at auditor's deed or at May Sale obtains title free from liens."

With this statement we are in accord and the following cases support the position: *Robinson* v. *Hanson,* 75 Utah 30, 282 P. 782; *Hanson* v. *Burris,* 86 Utah 424, 46 P. 2d 400.

Let us see what the practical situation is: No provision has been made for a joint collection of the special assessments for improvements and general taxes. The legislature might have provided for filing with the county tax officers a statement of special taxes due, for a prorata division of the proceeds from the tax sale, or some other adequate or suitable procedure. This has not been done. Nor has any other method been provided whereby the general taxes and special assessments are merged or may be prorata distributed or jointly satisfied. The procedure for each is separate, and joint tenancy is impossible under the procedure provided. Either the general tax lien is superior, and upon its legal foreclosure wipes out all other liens, or the special assessment lien is superior, and when properly and legally foreclosed wipes out all other liens, if the lien, or the results of its foreclosure, remains: *"until the tax is paid,* notwithstanding any *sale* on account of a general or special tax." The tax *sale* does not extinguish a mortgage lien or other encumbrance. Neither does a special assessment lien. It is the final foreclosure of the lien and transfer of title that does it.

The right of redemption created by the statute, if exercised before the redemption period expires, leaves the liens in status quo; or if in abeyance and after sale and before redemption, redemption revives them. When the redemption period expires and the further proceedings provided by the statute are taken the lien is made effective and the rights thereunder, when exercised by the county, merge the lien

into title. The problem is then one of title and is not one of
the existence of or the superiority of the lien. The title of
the owner is extinguished and the new title is initiated and
unless some lien not extinguished by the exercise of a valid
lien persists, clear title goes to the new owner. A title given
after a May Sale by the county would be no title at all if
another lien could come forward and extinguish that title.

In the event of default in the payment of a special assess-
ment, the property charged therewith is sold for such assess-
ment and costs in the manner provided by law or or-
dinance as for sales for delinquent general taxes.
Thereupon the special assessment lien is extinguish-
ed; but the general tax lien is not extinguished because of
the sale for a special assessment. It is provided that if no
person shall bid at such sale the amount due for the delin-
quent assessment, the property shall be deemed sold to the
city or town for the amount of such assessment and costs.

The city or town holds subject to the right of redemption
and the right of redemption may be exercised upon payment
of the full amount of the special assessment and such sale
does not affect the lien or right to sell for subsequent
general taxes. It is provided that the city or town on
making the sale for such special assessments shall pay
the holder of the warrants or bonds issued against the prop-
erty charged with the payment of the lien created for such
assessments. The city or town is thereby subrogated to the
rights of the holders of such bonds or warrants. The period
of redemption from special assessment sales, and they are
summary, is three years. R. S. U. 1933, Sec. 15-7-48.

The general set up for the collection of special improve-
ment taxes is more nearly analogous to drainage district and
irrigation district bonds and warrants, discussed in the case
of *Hanson* v. *Burris*, supra, than to a general tax lien.

Section 80-10-1, Revised Statutes of Utah 1933, relating
to general tax lien provides:

"Every tax has the effect of a judgment against the person, and
every lien created by this title has the force and effect of an execution

duly levied against all personal property of the delinquent. The judgment is not satisfied *nor the lien removed until the taxes are paid or the property sold for the payment thereof."* (Italics added.)

It definitely appears that if the language of both sections is to be given effect and both liens are existing until the taxes are paid, the failure to pay the taxes creates a lien in perpetuity. Surely, this result is not intended. If either one must yield, the tax which supports governmental functions on general principles must prevail. See *Robinson* v. *Hanson,* supra, and *Hanson* v. *Burris,* supra.

Section 80-10-3, R. S. U. 1933, also relating to the type of lien for general taxes provides:

"Every tax upon real property is a lien against the property assessed; and every tax due upon improvements upon real estate assessed to others than the owner of the real estate is a lien upon the land and improvements; which several liens attach as of the 1st day in January of each year."

There are further provisions of the statute indicating the legislative intent to make the lien for general taxes superior.

Section 80-10-36, R. S. U. 1933, provides:

"At any time after the *sale* and before the time for redemption has expired, the county treasurer is authorized and required, at private *sale,* at his office, to *sell* and assign the interest of the county in any of the real estate *sold* to the county for delinquent taxes to any person [and 'person' includes bodies politic and corporate, partnerships, associations and companies, Section 88-2-12, sub. (5), Revised Statutes of Utah, 1933] holding a recorded mortgage *or other lien* against such real estate, upon payment of the amount of the delinquent taxes, interest, penalty and costs thereon; and the county treasurer shall deliver duplicate receipts to the purchaser of such interest, on which he shall write '*Sold* for taxes at private sale.' Upon presentation of one of such receipts to the county auditor, he shall make out and deliver to the purchaser an assignment of the certificate of *sale* made to the county. Real estate *sold* to the county and afterwards assigned shall be subject to redemption as hereinafter provided, at any time within four years after the date of the original *sale.*" (Italics added.)

"Sale" and "sold," as herein used, do not refer to such sale as extinguishes the title of the owner and initiate a new title in the purchaser, either county or otherwise, so as to extinguish the right to redeem, nor prevent re-vesting of title in the owner upon redemption or the assignee lienholder, upon expiration of the redemption per-iod when assignment of the certificate of tax sale has been made to the recorded lien holder.

The legal issuance of a special assessment bond or warrant creates a right against the property assessed in favor of the city or the holder of the special assessment bond or warrant and runs against the specific property of the owner within the special improvement district. The levy is upon the district, the amount of the lien is that specified to be due from each owner as apportioned by the special assessment board, and may be satisfied prorata upon sale of the property of the delinquent against whose prop-erty the special assessment runs.

It is further provided, Section 80-10-68, R. S .U. 1933, that whenever a county has received a tax deed, that the board of county commissioners, after notice, shall offer for sale all real property not theretofore sold or redeemed, and in pursuance of that section, supra, and upon such sale which is not a tax sale but a sale of property held by virtue of a tax deed,

"the county clerk is authorized to execute deeds therefor in the name of the county and attest the same by his seal, *vesting in the purchaser all of the title of the state, of the county, and of each city, town, school or other taxing district interested in the real estate so sold.*" (Italics added.)

It can be said of the statutory provisions that there is in-tention on the part of the legislature to make each and all other liens, whether for special assessments or other encum-brances subject to the lien for general taxes and that the lien for general taxes shall persist until the taxes are paid. This construction eliminates the necessity of two liens each persisting until the taxes are paid, with the

uncertainty as to whether either one will ever be paid as taxes. The two taxes in question are not of equal rank. That is manifest. The May Sale under the decisions heretofore rendered by this court initiates a new unencumbered title from the sovereign state.

"We are not dealing with claims of intrinsic equality. The claim for the necessary support of government is a higher obligation than the demand for the costs of a local improvement, even though the latter has quasi public features. The first and paramount necessity for social order, personal liberty, and private property is the maintenance of civil government; and government cannot exist without revenues. The necessity and importance of preferring the lien for general taxes over other claims are so impelling that the priority of the sovereign claims of the state will not be depreciated or denied without warrant from the Legislature in clear and unmistakable terms; and we find no such warrant from the Legislature. The provisions of the statute upon the subject are not inconsistent with the priority of the right of the state to its necessary revenues." *Robinson* v. *Hanson,* supra [75 Utah 30, 282 P. 784].

The decision of the trial court is affirmed. Costs to respondent.

LARSON and PRATT, JJ., concur.

WOLFE, Justice (dissenting).

I dissent. The prevailing opinion seems to me to be contrary to the clear meaning and express language of Sec. 15-7-48, R. S. U. 1933. I sympathize with the desire to keep the lien for general taxes paramount, but in the face of a clear intent of the legislature to make it equal with the lien for special assessments, I think that it cannot be done.

The opinion states that "all provisions must be given effect in spite of apparent conflict if it is possible to do so," and then proceeds to discuss an "irrepressible conflict" which does not exist. The method of creating this conflict is to argue that the first sentence, reading "which lien shall be superior to the lien of any mortgage or other encumbrance whether prior in time or not, *except the lien of general*

taxes," implies that the lien for general taxes is to be superior to the lien for special taxes. In the first place, no such implication is warranted because a lien may be *not superior* to another lien and yet be *equal* to it. That it is *not superior* to another lien does not mean that such other lien is superior to it as hereafter demonstrated. But when we come to the last clause of that sentence reading "and such lien shall continue until the tax [special assessment] *is paid* notwithstanding any sale of the property for or on account of a general or special tax" there is no doubt whatsoever that the Legislature intended to make the liens equal. The section is, therefore, in perfect harmony. It shows unquestionably a legislative intent to make the liens equal. One wonders what the Legislature sought to accomplish if the construction arrived at in the prevailing opinion is correct. It did a useless thing because without Section 15-7-48, R. S. U. 1933, the general tax lien was superior. This court has done the rather queer thing of taking an act of the Legislature and reconstructing it in such a manner as to place the law exactly as it would have been if the Legislature had never acted. What a strange thing to do after stating that "the legislative intent is controlling and *in the end it is the legislative intent we strive to make effective"!* (Italics added.) Under the court's decision the results of passing Sec. 15-7-48 amount to exactly nothing. Certainly the Legislature does not enact purposeless laws. It appears rather plainly to us that the court arrived at its result through judicial rationalization.

There seems also to be implied in the opinion, that because of the paramount necessity for liens for general taxes to be superior, Sec. 15-7-48 must be construed so as to give way to that principle as reflected in other tax statutes. Hence, the word "sale" in the phrase "notwithstanding any sale of the property" is made to refer to the sale for delinquent taxes. But as shown hereunder, this makes the passage of Sec. 15-7-48 entirely useless.

We think the error of the opinion lies essentially in the

statement that "either the general tax lien is superior * * * or the special assessment lien is superior * * *." The opinion seems unable to conceive of equality of liens. What Sec. 15-7-48 intended to do and did do was to make the liens equal. But it is said two liens cannot be on a parity because if one is foreclosed and the other remains, the remaining lien may be foreclosed and thus destroy the security of the first lien, hence two liens cannot be equal—*one* must be superior and the *other* inferior. The argument is fallacious. Putting liens on a parity only means that one is not made inferior on foreclosure of the other. There is no guarantee that if the purchaser at the foreclosure sale of the lien first foreclosed fails to protect his property against the lien which remains when he buys the property, that he may not lose the property on foreclosure of the remaining lien. Parity simply means that the person who purchases the property at foreclosure sale purchases with the knowledge that the property still stands as security for another debt which would not be the case if he purchased at a foreclosure sale of a lien which was superior to other liens.

Other states have had no difficulty in conceiving of parity as created by statute. *State ex rel. Com'rs of the land Office* v. *Board of Com'rs of Nowata County et al.*, 166 Okl. 78, 25 P. 2d 1074, was an action by the State Land Office, which held a mortgage on certain realty, to foreclose said mortgage against all parties claiming an interest in the land. Among the defendants was the county treasurer who claimed a lien for unpaid taxes on the land. The point of the case in which we are interested here is whether the lien of the Land Office or the lien of the State for taxes was superior. Contrary to the holding of the majority opinion in the instant case, that one or the other lien *must* be superior, the Oklahoma Supreme Court said on page 80 of 166 Okl., 25 P. 2d at page 1077:

"We now repeat that a sale in foreclosure of a mortgage to the commissioners of the land office is made subject to the existing tax lien in favor of the state; that a sale of land for taxes is made sub-

ject to an existing mortgage on the land in favor of the commissioners of the land office; and that a sale in satisfaction of either lien does not operate to extinguish the other lien. * * *

"An examination of that statute discloses no legislative intention thereby to cause either the lien of the state for taxes or the lien of the state under a mortgage to the commissioners of the land office to be superior to the other lien. Those liens are coequal. They are of equal rank."

In *Robinson* v. *Hanson,* 75 Utah 30, 282 P. 782, it properly was held that the taxes for governmental purposes, by the very exigency of their need, must be considered a paramount charge on the taxpayers' property. But neither in that case nor in *Hanson* v. *Burris,* 86 Utah 424, 46 P. 2d 400, affirmed *Ingraham* v. *Hanson,* 297 U. S. 378, 56 S. Ct. 511, 80 L. Ed. 728, was there any question of the legislature expressly giving another tax an equal lien position. Such situation was not considered. It is not contended that the legislature cannot constitutionally do so.

Nor can I see that the failure of the Legislature to provide for collecting the two taxes in one procedure, wiping out both liens with one sale and requiring a composite redemption, has anything to do with what the Legislature really did do. I shall, hereafter, in the affirmative portion of this opinion suggest a judicial holding which would prevent foreclosure of the special tax lien while title to the property remains in the county. Such would prevent the results so lugubriously predicted in the main opinion unless the general tax lien is held at all events superior, and at the same time would recognize and preserve the undoubted intent of the Legislature to put the liens on an equal plane.

We cannot see anything in Section 15-7-48 which is in conflict with Section 80-10-68 or Section 80-10-36, R. S. U. 1933, upon which the opinion seems to lean so heavily. There is nothing in those statutes which says that the sale and assignment of the interest of the county to a lien holder before the period of redemption has expired must be free of the rights of other lien holders, or, that even inferentially holds that the Legislature could not, without inconsistency,

provide that a lien for special taxes should still attach to the property so sold under 80-10-36. Nor is there anything in the language in Section 80-10-68 reading "vesting in the purchaser all of the title of the state, of the county, and of each city, town, school or other taxing district interested in the real estate so sold," which is in conflict with Sec. 15-7-48. The main opinion seems to labor under the idea that the county must convey to the purchaser not only "all title of the state" but a title free of all encumbrances. This idea seems to be implicit in the language of the opinion which reads "A title given after a May Sale by the county would be no title at all if another lien could come forward and extinguish that title." I do not understand such language. The lien does not "come forward and extinguish that title." The title is taken subject to the lien. That is a common phenomenon in law. There is no conflict.

The opinion speaks of a "final foreclosure of the lien." This is also confusing. In the concurring opinion in *Hanson* v. *Burris*, supra, the writer called attention to the meaning of the word "lien" as it applied to a district and also to the parallel between a judicial foreclosure of a contract lien and a statutory foreclosure of a lien for taxes. The foreclosure in the statutory procedure is the sale for delinquency. After that there is only a time for redemption and, if there is no redemption, an auditor's deed issues to the county or purchaser just as a sheriff's deed issues to a purchaser under a mortgage foreclosure. There is only one foreclosure—not two.

I shall now pass on to the affirmative part of my dissent. Section 15-7-48, R. S. U. 1933, so far as material here reads, as follows:

"Special assessments made and levied to defray the cost and expense of any work or service contemplated by the provisions of this article, and the cost of collection thereof, shall constitute a lien upon and against the property upon which such assessment is made and levied from and after the date upon which the ordinance levying such assessment becomes effective, which lien shall be superior to the lien of any mortgage or other encumbrance, whether prior in time or not,

except the lien of general taxes, *and such lien shall continue until the tax is paid notwithstanding any sale of the property for or on account of a general or special tax.*" (Italics added.)

The language must be taken to mean what it plainly says. There is no doubt that unless the legislature *plainly* specifies otherwise the county, either at the expiration of four years from delinquency, or at auditor's deed, or at May sale, whichever event cuts off all liens, obtains title free from liens. *Hanson v. Burris,* supra; *Robinson v. Hanson,* supra; *Portneuf-Marsh Valley Canal Company v. Brown,* 274 U. S. 630, 638, 47 S. Ct. 692, 71 L. Ed. 1243; *La Mesa Lemon Grove & Spring Valley Irr. Dist. v. Hornbeck,* 216 Cal. 730, 17 P. 2d 143; *State ex rel. Malott v. Board of Commissioners,* 89 Mont. 37, 77, 296 P. 1; *In re Dancy Drainage District* 199 Wis. 85, 94, 225 N. W. 873; *Stephens v. First National Bank of Newman,* 166 Ga. 380, 143 S. E. 386; 26 R. C. L. 404.

The language in the Burris Case, while stating that the lien was eliminated at the latest when auditor's deed issues, did not touch on the question of whether a lien would survive if the Legislature expressly said it should survive. In that case we did not have before us the question of what the effect would be if the Legislature expressly provided that a lien should survive auditor's deed or a sale to the county. No such question was raised.

There can be no question as to the power of the Legislature to provide for such survival. *Robinson v. Hanson,* supra *Salt Lake City v. Christensen Co.,* 34 Utah 38, 42, 95 P. 523, 17 L. R. A., N. S., 898; *State ex rel. Salt Lake City v. Eldredge,* 27 Utah 477, 482, 76 P. 337; *Lannan v. Waltenspiel,* 45 Utah 564, 147 P. 908; *La Mesa Lemon Grove, etc. v. Hornbeck,* supra; *Neary v. Peterson,* 1 Cal. 2d 703, 37 P. 2d 82; *Bosworth v. Anderson,* 47 Idaho 697, 280 P. 227, 65 A. L. R. 1372; *Saluda v. Polk County,* 207 N. C. 180, 176 S. E. 298; *Commerce Trust Co. v. Syndicate Lot Company,* 208 Mo. App. 261, 232 S. W. 1055, 235 S. W. 150; *Fisher v. Brower,* 159 Ind. 139, 64 N. E. 614; McQuillin, Municipal Corporations (2nd Ed.) Sec. 2262.

It is urged that the word "sale" in the phrase "notwithstanding the sale of the property for or on account of a general or special tax," means and refers to the tax sale for which, on delinquency, a certificate is given; that it survives that sale but not the event which, under the general tax procedure, eliminates all liens after right of redemption is gone. We do not think this could be the intent of the statute. As before stated, there was no necessity for such legislation because without it the special tax lien between certificate of sale and auditor's deed either remained as a lien or, as the opinion puts it, would be revived on redemption. Consequently, nothing was gained by legislating that the lien for special taxes should remain only until the event which irrevocably cleared off all liens where, as far as the right of redemption was concerned, it existed without the statute.

We think the Legislature must have had some purpose in enacting Sec. 15-7-48. The prevailing opinion leaves no purpose whatsoever for said section, for up to the time when the lien was finally extinguished the owner or city could redeem even if the special tax lien had not been especially preserved by statute and the property would, as before, stand as security for the tax. We think the intent of the statute was to preserve the lien for special assessments after the county obtained such title as would otherwise be free from liens or any rights of the former owner or former lienholder. This thought is borne out by the language which says "such lien shall continue until the tax is paid  *  *  *." Consequently, even though we construe the word "sale" to apply to sales for delinquent taxes and not to the event which were it not for Sec. 15-7-48 would eliminate, in the case of general taxes, all liens, exactly the same result is reached because the lien must remain until the special tax "is paid." The remainder of the section is really useless except for emphasis.

The Tax Commission makes a valiant effort to prevent this result, but its efforts are directed mainly to showing

how important it is that the property come into the hands of the county free of any liens in order that it may be readily sold to private parties and the tax thus collected and the property returned to the tax rolls. All this is conceded. This court expressed the same concern and on it based its reasoning in holding that the county took without liens of any kind in *Robinson* v. *Hanson,* supra; *Hanson* v. *Burris,* supra. But the liens considered in those cases were only those which no statute preserved. In the face of such a clear expression that the lien for special assessments shall survive as is contained in Section 15-7-48, we are powerless to hold otherwise.

We need not now determine whether, as did the Minnesota Court, the lien for general taxes ripens into a title in the county by proper tax procedure and the lien for special assessments ripens into a title in the city by proper procedure, making them tenants in common. *Gould* v. *City of St. Paul,* 120 Minn. 172, 139 N. W. 293; *Midway Realty Co.* v. *City of St. Paul,* 124 Minn. 300, 145 N. W. 21. See also *Justice* v. *Logansport,* 101 Ind. 326; *Stiles* v. *Galbreath,* 69 N. J. Eq. 222, 60 A. 224. It may be that if the city's lien survives it cannot be foreclosed during the incumbency of the title in the county. Such conception would prevent the awkward and questionable conception of two titles coming from the foreclosure of liens at different times. But that question is not before us. Suffice it to say that if the city sells before the county to foreclose its lien, the lien for general taxes survives. If the county sells before the city, the lien for the special assessments survives.

The Tax Commission has also urged in behalf of the respondent that even if it be admitted that the liens of the city and the county are on a parity the county's lien for general taxes must prevail since it was the last perfected and the rule as to tax liens is "last in time, first in right." There is unquestioned support for this rule. *Conley* v. *Hawley,* 2 Cal. 2d 23, 38 P. 2d 408; *Woodhill & Hulse Electric Co.* v. *Young,* 180 Cal. 667, 182 P. 422, 5 A. L. R. 1296; *Midway*

*Realty Co.* v. *City of St. Paul,* supra; Cooley on Taxation (4th Ed.) Sec. 1242; McQuillin, op. cit., Sec. 2262; 44 C. J. 1338. Authority on this question, however, is divided. McQuillin, op. cit., Sec. 2262; 44 C. J. 1338; 5 A. L. R. 1301 (annotation). The rule is applicable only in the absence of statutory provision. This follows from the power which the state has over tax liens, heretofore referred to. Here the statute is plain. It provides that the lien of the city "shall continue until the tax [assessment] *is paid,* notwithstanding any sale of the property for or on account of a general or special tax." (Italics added.) This aspect of the case has been concluded by the Legislature.

We consider and distinguish the following cases cited and strongly relied on by the Tax Commission: *Bosworth* v. *Anderson,* supra; *Studly* v. *Luse,* 89 Ore. 338, 173 P. 1182; *Fergason* v. *Aitken,* 220 Iowa 1154, 263 N. W. 850.

In *Bosworth* v. *Anderson,* supra [47 Idaho 697, 280 P. 228, 65 A. L. R. 1372], the Idaho court held that a statute which read that the special assessment "shall have priority over all other liens and encumbrances whatsoever" must be read to mean over all other liens, except the lien for general taxes. This was because the Idaho Constitution provided (Art. 7, Sec. 7) that no property shall be discharged from its share of taxes for state purposes. The Idaho statute did not except the lien for general taxes in declaring paramountcy for the assessment lien. To have held the assessment lien paramount would in effect have worked a discharge of property from its share of taxes for state purposes, hence the Idaho court construed the statute giving paramountcy to all special assessment liens as against all liens except those for general taxes. But since our statute puts the two liens in parity we have not that difficulty.

In *Studly* v. *Luse,* supra, a special act of the Legislature incorporating the City of Eugene gave priority to its assessment liens over all other liens whatever. The court did not think the Legislature intended to make the state government subordinate to one city and ruled that the City of Eu-

gene had no greater power than other cities to supersede the state's tax lien. (Per contra, however, see *Commerce Trust Co.* v. *Syndicate Lot Co.*, supra.)

The other case cited as showing the length to which we should go to preserve paramount the general tax lien is *Fergason* v. *Aitken*, supra. There, indeed, it was provided by statute that drainage district assessments should be liens "as fully as taxes levied for state and county purposes." [220 Iowa 1154, 263 N. W. 851.] But the court there was prevented from upholding an equality by its former decisions. It was said to be well settled in that state that the city assessment liens are inferior to the general tax lien. Another case had held that a city assessment lien and a drainage tax lien were on a parity. That court, therefore, had only to apply those two premises to hold that the nominal parity must yield to the paramountcy of the general tax lien.

Finding no invalidity in the statute as written and no authority which impels a different view, we are of the opinion that the statute means what it says: That the lien of the city survives sale for general taxes and the auditor's deed is subject to it. The receipt of a deed from the county for property which the county acquired on account of delinquent taxes, does not divest the special assessment lien of the City of Richfield. The judgment of the district court should be reversed.

McDONOUGH, Justice.

I concur in the views expressed by WOLFE, J., in his dissenting opinion.