MIDWAY REALTY COMPANY v. CITY OF ST. PAUL.[1]

January 9, 1914.

Nos. 18,493—(286).

**Priority as between tax title and local assessment lien.**

    1. A tax title based on a single forfeited sale for taxes for the years 1891, 1892, and 1902 to 1909 inclusive, is equal in right of priority with a lien based upon a St. Paul city assessment accruing in 1909, following Gould v. City of St. Paul, 120 Minn. 172, and Midway Realty Co. v. City of St. Paul, infra, page 300.

**Owner cannot cut out city assessment by subsequent tax title.**

    2. An owner of property cannot cut out a city assessment on his property by buying up a subsequent tax title. The evidence in this case is insufficient to sustain a finding that the intervening defendant holds an independent lien superior to the rights of the defendant city.

The Midway Realty Co. made application to the district court for Ramsey county to register title to a certain lot in defendant city. In its separate answer defendant city set up a sale of the lot to defendant to satisfy a judgment for a local improvement and the execution and delivery to defendant of a certificate of sale thereof. The case was tried before Dickson, J., who made findings and ordered judgment that the applicant was the owner in fee simple of the premises, subject to the lien of Thomas McDermott, the owner of a certain state assignment certificate for delinquent taxes for the years 1910 and 1911. From the judgment entered pursuant to the order for judgment, defendant city appealed. Reversed.

[1] Reported in 145 N. W. 24.

---

Note.—As to the superiority of lien for special assessments over lien for taxes, see note in 30 L.R.A.(N.S.) 768.

*O. H. O'Neill,* Corporation Attorney, and *J. P. Kyle,* Assistant Corporation Attorney, for appellant.

*William G. White* and *Thomas McDermott,* for respondents.

. HALLAM, J.

1. The Midway Realty Co. holds under a governor's deed issued April 4, 1912, pursuant to a forfeited tax sale held November 15, 1910, for taxes for the years 1891, 1892, and 1902 to 1909 inclusive.

The city of St. Paul holds a lien based upon a local improvement assessment, the warrant for collection of which was issued November 12, 1909. The premises were sold to pay this lien June 25, 1910. The time for redemption will not expire until June 25, 1915.

Thomas McDermott, on March 27, 1913, purchased a state assignment tax certificate for taxes for the years 1910 and 1911.

Following the decision in Gould v. City of St. Paul, 120 Minn. 172, 139 N. W. 293, and Midway Realty Co. v. City of St. Paul, infra, page 300, 145 N. W. 21, it is held that the taxes under which applicant claims title and the assessment lien held by the defendant city are equal in right of priority, and neither can be effective to bar the other. The title of the city under its certificate has not been perfected, and, as was explicitly stated in Gould v. City of St. Paul, 120 Minn. 172, 177, 139 N. W. 293, "as a lien it could only be discharged by payment."

This disposes of the case as between applicant plaintiff and defendant city. There remains to be disposed of the question of the rights of defendant McDermott.

The city contends that defendant McDermott in fact purchased this certificate in the interest of the applicant plaintiff. If such is the case, his rights could be no greater than would have been the rights of applicant plaintiff had it purchased the certificate itself. The applicant plaintiff having perfected a tax title, stands in the situation of an owner of the property. An owner of land cannot purchase a tax title and assert it as a means of avoiding the payment of city assessments lawfully chargeable against his own property.

The only evidence bearing upon the relation of defendant McDer-

mott to this property is that of the defendant himself. Reducing his testimony to narrative form, he says, in substance:

I think they were purchased in the interest of my father. I presume he is the owner. The money was turned over to me by him and I bought them for him in my own name. I don't think I investigated the condition of this title when I bought those taxes. I knew the Midway Realty Co. had an interest in it. I am related to Mr. Fitzgerald who is vice-president of the Midway Realty Co. I am a nephew by marriage. Asked "Do you hold those taxes as an adverse holder to Mr. Fitzgerald's interest?" he answered, "Why, I don't presume—I presume it is adverse so far as the legal condition is concerned, but I presume if he were to ask me to surrender them for the money I paid in, I suppose I would do it." Asked "Is there any arrangement or understanding *between you and Mr. Fitzgerald* and between your father and Mr. Fitzgerald whereby you are holding those for Mr. Fitzgerald's purposes?" he answered "I don't know as to that. I wouldn't say." He later said: "As I said before, I don't believe on account of my relation with Mr. Fitzgerald I would want to do anything at all." He purchased his tax certificate pending this litigation and then interposed an answer prepared by the attorney for the applicant Midway Realty Co. Asked if the answer was in the interest of the Midway Realty Co. he answered "I wouldn't say that." On cross-examination by the Midway Realty Co.'s attorney, the following testimony was given:

Q. "The idea which I have at the bottom of this isn't whether you paid your own money in personally for the present or for a short time —but is whether you are holding any rights antagonistic to the Realty Co."

A. "We are, so far as our rights to this property is concerned, but I will say to you that anything Mr. Fitzgerald wants within the bounds of reason he is going to get."

Q. "But the legal rights of the parties are what the papers determine?"

A. "What the papers determine."

A reading of the whole of this quite frank testimony leaves little room for doubt that the applicant plaintiff and defendant McDermott

are not really adversaries in this lawsuit. We are of the opinion that the evidence does not sustain the finding that defendant "McDermott has a first and perpetual lien * * * prior and superior to the rights of the applicant and of all of the defendants in this proceeding." We are not, however, disposed to order judgment against defendant McDermott, and as to this issue a new trial is granted.

Judgment reversed and cause remanded, with directions to proceed in accordance with the views expressed in this opinion.

On January 30, 1914, the following opinion was filed:

PER CURIAM.

Defendant McDermott, on motion for reargument, takes exception to the statement in the opinion that "an owner of land cannot purchase a tax title and assert it as a means of avoiding the payment of city assessments lawfully chargeable against his property."

He cites G. S. 1913, § 2119, which gives the owner of property a right to acquire a tax title "free from any claim, lien, or incumbrance, except such right, title, interest, lien or incumbrance as such owner may be legally or equitably bound to protect against such sale, or the taxes for which such sale was made," and he argues that this statute gives to an owner under a tax title the right to rid the property of city assessment liens, by allowing the land to be sold for subsequent taxes, then himself buying the certificate of sale and perfecting title thereunder. White v. Thomas, 91 Minn. 395, 399, 98 N. W. 101, is cited as sustaining this contention. The court in White v. Thomas did not hold that under the laws existing at that time a tax-title holder might do just what defendant claims he may now do. At the time that decision was made, tax and assessment liens were not of equal rank. The assessment lien was a subordinate lien. Since that time, chapter 200, p. 255, Laws 1905, has been passed, making them of equal rank. We cannot apply the rule of White v. Thomas under the statute in force now. By the terms of this statute plaintiff and the city are holders of co-ordinate liens. Plaintiff's lien has matured into a title. Plaintiff, as owner under the tax title, and defendant, with its assessment lien, are now equal in rank and in right of priority. If the city's lien had ripened into a title, the two

would be tenants in common. One tenant in common never could assert a tax title against the other. Section 2119 did not change this rule. Such a case is within the exception of the statute. A "cotenant is one of the parties whom the purchaser is equitably bound to protect." Easton v. Scofield, 66 Minn. 425, 69 N. W. 326; Norton v. Metropolitan L. Ins. Co. 74 Minn. 484, 77 N. W. 298, 539. Following the analogy of these cases, it seems clear that the exception of the statute should apply here also, and that the holder of a title based upon a tax lien cannot acquire a subsequent tax title to the prejudice of the holder of the co-ordinate assessment lien, although the assessment lien has not yet ripened into a title.

Motion for reargument denied.