No. 12,059.

THE PEOPLE *v*. CITY AND COUNTY OF DENVER.

Decided December 24, 1928.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. OLIVER DEAN, Assistant, for the people.

Mr. THOMAS H. GIBSON, Mr. FRANK L. HAYS, Mr. GEORGE HETHERINGTON, for defendant in error.

*Department Two.*

MR. JUSTICE BUTLER delivered the opinion of the court.

ON June 9, 1927, the plaintiff in error, called in this opinion the state, sued The Shield Oil Company, under chapter 153, S. L. 1923, to recover gasoline excise taxes in the sum of $2,943.93, which had accrued between February 1, 1926, and March 1, 1927, and gasoline inspection fees in the sum of $8.09. On the same day the court appointed a receiver of the business and all of the property of the company "for the purpose of impounding and conserving the said property and business as security for any judgment" that might be recovered in the action. Judgment for $2,952.02 and costs was entered in favor of the state and against the company. Thereafter the defendant in error, called in this opinion the city, filed its statement of and claim for general personal property taxes for 1926 and 1927, amounting to $426.50. In due time the receiver filed his final report, from which it appeared that after converting into cash all of the company's property and paying the expenses of the receivership, the receiver had on hand $1,923.47, which was considerably less than the state's judgment. The receiver stated that the state and the city each asserted a preference for its claim, and he asked for an order authorizing him to deposit the money with the clerk of the court for distribution as later may be ordered by the court. The order for the deposit was entered, whereupon the receiver

deposited $1,923.47 with the clerk. The court decided that the city had the prior right, and ordered the clerk to pay to the city the full amount of its claim, and to pay the balance to the state to apply on its judgment.

Section 7375, C. L. (enacted in 1902), provides: "All taxes levied or assessed upon personal property of any kind whatsoever shall be and remain *a perpetual lien* upon the property so levied upon, until the whole amount of such tax is paid." Such lien attaches "on the first day of April in each year." C. L., § 7180.

In 1923 the legislature passed an act (S. L. c. 153) levying an excise tax of two cents on each gallon of gasoline, etc., "offered for sale, or used for consumption for power purposes in propelling motor vehicles." The money derived from the tax is to be placed by the state treasurer in "a special road fund"; one-half to become a part of the state highway fund, and one-half to be apportioned among the several counties according to the mileage of state routes and state highways, as established by the state highway department. Section 2 authorizes the bringing of a suit by the attorney general to collect the tax, and provides: "In the event such a suit is instituted, upon application made by the attorney general, the court may issue a writ of injunction, without requiring any bond, enjoining and restraining the defendant from selling or offering to sell any product subject to said tax until any judgment recovered in said suit has been paid, and the court shall, upon application therefor by the attorney general, appoint a receiver of the property and business of the delinquent defendant, for the purpose of impounding the same as security for any judgment recovered, and said tax shall constitute *a first and prior lien* against said property."

The question of tax liens is for legislative determination. The legislature may or may not make taxes a lien upon property; if it does not do so, no lien exists. It also may determine the priority of tax liens. Thus, an act of 1893 (S. L., art. VII, § 32, p. 213) provided that the lien

of assessments for public improvements "shall have priority over all other liens *excepting general taxes.*" In 1911 the legislative policy changed, and general tax liens upon real estate were given priority over all other liens except those "created by special assessments for public improvements." C. L., § 7179. There seems to be no substantial reason why the legislature may not also provide for priority as between the lien of general taxes on personal property and the lien of the tax on gasoline. Good roads are a public necessity; and the legislature has seen fit, by imposing a gasoline tax, to place upon those specially benefited by good public highways a substantial part of the cost of constructing and maintaining them. In making such tax a first and prior lien, the legislature did not exceed its power.

As we have seen, section 7375, C. L. (enacted in 1902), declares that all taxes upon personal property shall be a "perpetual lien" upon the property levied upon. It does not attempt to declare priority as between different kinds of taxes. The act of 1923, on the other hand, specifically declares that the gasoline tax "shall constitute a first and prior lien against said property." It does not add, as did the act of 1893, supra, "excepting general taxes." In the face of this unambiguous declaration in the act of 1923, we cannot sustain the city's contention that the gasoline tax constitutes not a first, but a second, lien; not a prior lien, but one subordinate to the lien of general taxes.

As between the lien of the gasoline taxes due to the state and the lien of the general taxes due to the city, the former, under the act of 1923, supra, is a first and prior lien.

The judgment is reversed, and the cause is remanded for further proceedings in harmony with the views expressed in this opinion.

Mr. Justice Burke, sitting for Mr. Chief Justice Denison, Mr. Justice Adams and Mr. Justice Campbell concur.