ROBINSON v. HANSON et al.

No. 4757. Decided September 4, 1929. (282 P. 782.)
Rehearing Denied December 13, 1929.

*J. A. Melville, Jr.,* and *Soule & Spalding,* all of Salt Lake City, for appellant.

*Tangren & Crafts,* of Delta, for respondent.

CHERRY, C. J.

This is an action to quiet title to a tract of land in Millard county. The plaintiff claims title by virtue of a tax deed issued pursuant to a regular sale of the property for delinquent general taxes assessed and levied for the year 1922. The defendant Millard County Drainage District No. 1 relies upon a tax deed for the same property issued to it upon a regular sale for delinquent drainage district taxes assessed for the year 1922. The district court entered a decree quieting and confirming the title in the plaintiff; from which the defendant last named has appealed.

The sole question is whether the lien for general taxes is paramount and superior to, or of equal rank with, the

lien for taxes or assessments levied by a drainage district organized under title 26, Comp. Laws Utah 1917. It is a recognized principle of law that taxes for general governmental purposes, lawfully imposed by the state, are paramount to all other demands against the taxpayer, although the statute imposing the tax does not expressly declare such priority. This rule rests upon public policy and necessity. Civil government cannot exist or be maintained without revenues, and taxes levied by the state for its support are founded upon a higher obligation than other demands. It is essential to the dignity and power of the sovereign state that taxes levied by it be promptly collected without fail. *State* v. *of Minn.* v. *Central T. Co.*, 94 F. 244, 36 C. C. A. 214; *White* v. *Knowlton*, 84 Minn. 141, 86 N. W. 755; *Commerce T. Co.* v. *Syndicate L. Co.*, 208 Mo. App. 261, 232 S. W. 1055, 235 S. W. 150; *City of Ballard* v. *Ross*, 38 Wash. 209, 80 P. 439; *Cont. & Com. T. & S. B.* v. *Werner*, 36 Idaho 601, 215 P. 458.

Appellant does not seriously dispute the general principle stated, but contends that the statutes of the state evince an intention to constitute the liens of the respective taxes in question of equal rank and priority, and that therefore the parties hereto are tenants in common of the land in controversy, their shares being in proportion to the respective amounts of the taxes for which the property was sold.

The statutory provisions relating to the character and quality of the liens of the respective taxes in question are as follows: With respect to the lien for general taxes, Comp. Laws Utah 1917 provides:

Section 5995: "Every tax has the effect of a judgment against the person, and every lien created by this title has the force and effect of an execution duly levied against all personal property of the delinquent. The judgment is not satisfied nor the lien removed until the taxes are paid or the property sold for the payment thereof."

Section 5997: "Every tax upon real property is a lien against the property assessed; and every tax due upon improvements upon real estate assessed to others than the owner of the real estate is a

lien upon the land and improvements; which several liens attach as of the second Monday in January in each year."

Concerning the lien for drainage district taxes, Comp. Laws Utah 1917, § 2058, as amended by chapter 109, Laws Utah 1925, is as follows:

"All drainage taxes levied and assessed under the provisions of this title shall attach to and become a lien on the real property assessed from and after the second Monday in March. Drainage taxes shall become due and delinquent at the same time, and shall be collected by the same officers and in the same manner and at the same time as state and county taxes, and when collected shall be paid to the treasurer of the board of supervisors. The revenue laws of this state for the assessment, levying and collecting of taxes on real estate for county purposes, except as herein modified, shall be applicable for the purpose of this act, including the enforcement of penalties and forfeiture for delinquent taxes; provided, that lands sold for delinquent district taxes shall be sold separately for such tax and a separate certificate of sale shall issue therefor, and provided further that the period of redemption from sale for taxes under this act, shall be four years. * * *"

This section further provides for the separate publication of the delinquent drainage tax list, and for a separate sale of the delinquent real estate for the drainage district taxes, and that:

"In absence or default of purchaser at any such public sale of drainage district taxes, the drainage district in which taxes are delinquent shall become the purchaser and shall receive from the county treasurer the tax sale certificate of the real property on which drainage district taxes are delinquent upon the same terms upon which the county receives tax sale certificates on sales for delinquent state and county taxes and shall hold the same in the same manner as an individual may hold real property upon which state or county taxes are delinquent, subject to the same rights of redemption."

These are all of the provisions of the statute which relate to the liens of the taxes involved herein. Comp. Laws Utah 1917, § 699, as amended by chapter 15, Laws Utah 1921, cited by appellant, relates exclusively to special taxes for local improvements in cities, and, whatever its effect upon

the lien of such taxes, it clearly has no reference to drainage district taxes. We perceive nothing in the relevant statutory provisions indicating an intent to make the respective liens for the two taxes in question of equal rank. The most that can be said for the contention of equality is that the statutes are silent upon the subject. And that is not enough to justify the legal conclusion that the claims are equal.

We are not dealing with claims of intrinsic equality. The claim for the necessary support of government is a higher obligation than the demand for the costs of a local improvement, even though the latter has quasi public features. The first and paramount necessity for social order, personal liberty, and private property is the maintenance of civil government; and government cannot exist without revenues. The necessity and importance of preferring the lien for general taxes over other claims are so impelling that the priority of the sovereign claims of the state will not be depreciated or denied without warrant from the Legislature in clear and unmistakable terms; and we find no such warrant from the Legislature. The provisions of the statute upon the subject are not inconsistent with the priority of the right of the state to its necessary revenues.

JUDGMENT AFFIRMED.

STRAUP, ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.