No. 15,265.

CITY REAL ESTATE, INC. *v*. SULLIVAN, DOING BUSINESS AS SULLIVAN AND COMPANY.
(180 P. [2d] 504)

Decided April 7, 1947. Rehearing denied May 12, 1947.

Mr. STEVENS PARK KINNEY, for plaintiff in error.

Mr. HOWARD ROEPNACK, for defendant in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. GEORGE K. THOMAS, Assistant, Mr. MALCOLM LINDSEY, Mr. CHARLES M. ROSE, Mr. RODNEY J. BARDWELL, JR., Mr. ERSKINE R. MYER, Messrs. PERSHING, BOSWORTH, DICK & DAWSON, amici curiae.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

IN an action to quiet title to certain lots in the Town of Mountain View, Berkeley, Jefferson county, there

were numerous defendants, including the town, and, other than defendant in error, all disclaimed or suffered judgment of default. Plaintiff in error relied on tax sale deeds issued to it August 11, 1941, pursuant to tax sale certificates based on unpaid general tax levies for various years, 1929 to 1935, covering the several properties involved in the action. In the first instance, the certificates ran to the county, but March 4, 1941, they were assigned to plaintiff in error. In 1924, Mountain View had subjected the same properties to special sidewalk assessments, which became liens immediately. Those levies also were defaulted, and in 1937 there were tax sales on account thereof and certificates evidencing such sales were issued to the town. Notwithstanding plaintiff in error's tax deeds, predicated on unpaid general levies on the property involved, as noted above, defendant in error, alleging that the town had assigned the special improvement tax sale certificates to him, pleaded them as existing and continuing liens thereon. In addition thereto, defendant in error alleged irregularity in the issuance of the tax deeds of plaintiff in error's reliance, as well as the insufficiency thereof, and otherwise attacked them exhaustively. Other than as to defendant in error's claim of lien, which was sustained, the trial court resolved all issues in favor of plaintiff in error, and quieted its title to the property involved, subject to said lien. Plaintiff in error's specification of points challenges defendant in error's adjudged lien, and since there is absence of cross specifications, the potency of that lien is the sole point for resolution on review.

██ In the circumstances appearing, our decisions are to the effect that holders of tax deeds issued pursuant to general levies enjoy title to the property described therein, freed from liens of special improvement tax levies, and certificates of tax sales, if any, issued because of defaulted payment thereof. *Fishel v. Denver,* 105 Colo. 120, 95 P. (2d) 1; *Boulder v. Plains Co.,* 75 Colo. 86, 224 Pac. 233; *Whitehead v. Desserich,* 71 Colo. 327,

206 Pac. 384; *Bennett v. Denver,* 70 Colo. 77, 197 Pac. 768. But notwithstanding the foregoing decisions, two statutory enactments are called to our attention, one of which is emphasized, in justification of the trial court's determination. In order of enactment, the statutes are section 3, chapter 142, '35 C.S.A. (S.L. 1911, p. 565, §1), and section 83, chapter 138, '35 C.S.A. (S.L. 1923, c. 180, §19). The 1911 act, a part of which we italicize, reads as follows: "All taxes shall be levied for the fiscal year which shall end with November thirtieth. Taxes levied upon any real estate shall be a perpetual lien upon such real estate, until such taxes and any penalty, charges and interest which may accrue thereon shall be paid, *and such liens shall have priority over all other liens except such liens as then exist which have been created by special assessments for public improvements;* and any property, real, personal or mixed, which has, by mistake or oversight, been omitted from the tax list for any year or years shall be subject to assessment for all back taxes properly chargeable thereon." Other than as to the italicized language, incorporated therein by the 1911 act, the statute dates from 1902 (S.L. 1902, p. 43, §3). The 1923 act, an original conception, entitled, "Relating to local improvements in cities and towns," provided that special improvement assessments made pursuant thereto, shall "constitute a perpetual lien on a parity with the tax lien for general state, city, town or school taxes, and no sale of such property to enforce any general state, county, town or school tax or other lien shall extinguish the perpetual lien of such assessments." §19. The 1911 act was in force, and considered at the time of the several pronouncements in the cases cited above, and tax deeds based on general tax levies were held to have primacy over special improvement tax certificates notwithstanding; and the 1923 act was in force, but not mentioned, when opinions in the two last cases were promulgated.

■ General tax levies have genesis in the Constitution; that of special improvement tax levies in statutory enactments. "The general assembly," reads the Constitution, "shall provide by law for an annual tax sufficient, with other resources, to defray the estimated expenses of the state government for each fiscal year." Const. art. X, §2. "No county, city, town or other municipal corporation, the inhabitants thereof, nor the property therein," continues the Constitution, "shall be released or discharged from their or its proportionate share of taxes to be levied for state purposes." Ibid. §8. The General Assembly in enacting the original statutory provision (the 1902 portion of section 3, chapter 142, '35 C.S.A., already quoted), conforming to the constitutional conception, made general tax levies a "perpetual lien" on real estate, "until such taxes and any penalty," etc., "shall be paid," and said nothing of special improvement levies. By the 1911 amendment to the 1902 act, italicized in the above quotation, there was legislative attempt to place special tax liens on equality with general tax liens. Proceeding on the theory that the general assembly had such power, holders of tax certificates issued pursuant to tax sales for defaulted special improvement levies, sought in the several cases cited, supra, to maintain such levies as against tax deeds regularly issued for general levy defaults. What must have been the legal principle that moved us to hold adversely to that claim? The legislative amendment, its context considered, justified the faith of those relying thereon. Why, then, were they unsuccessful? The controlling reason, although not specifically stated in our opinions, necessarily had basis in the constitutional provisions set forth above, that is to say, that through no visitation of special improvement tax shall general tax levies be impaired. The Constitution contemplates the levy of an annual general tax, to cover "expenses * * * for each fiscal year." Also, the Organic Law, section 8, supra, makes clear that no county, or city, or town, or the "inhabitants thereof, nor

the property therein, shall be released or discharged from their or its proportionate share of taxes to be levied for state purposes" from year to year. Statutes familiar to tax levying and tax collecting public officials, as well as to the legal profession, provide that real property on which general taxes, levied in the spirit of the Constitution, have not been paid, is subject to tax sale, potentially, in the absence of redemption, to eventuate into tax deeds. The situation here instances the procedure. After we had announced the equivalent of the foregoing in *Bennett v. Denver* and *Whitehead v. Desserich, supra,* and on authority thereof, we stated in *Boulder v. Plains Co., supra,* that the doctrine in this state had become "stare decisis," and in *Fishel v. Denver, supra,* again adverting to the matter, that it had become a "rule of property."

 But, says defendant in error, and in this he is ably supported by some of amici curiae, the 1923 act provides not only that a special improvement assessment shall "constitute a perpetual lien on a parity with the tax lien for general *. * * taxes," but that "no sale of such property to enforce any general * * * tax * * * shall extinguish the perpetual lien of such assessments," and, therefore, plaintiff in error's tax title continues to be burdened with the special assessment levy. We doubt the soundness of that statement. It is to be observed that the statute of defendant in error's dependence does not provide there shall not be sales for unpaid general taxes, but only that no such sale shall extinguish the perpetual lien of special improvements. Other statutes, however, as we have seen, do provide for tax sales in aid of the enforcement of general levies constitutionally contemplated, and if there shall not be redemption from such sales, tax deeds will issue in due course. So long as the title to the land involved remains in the owner at the inception of the two different assessments, or in grantees through mesne conveyances, both liens continue in full force, and perpetually, as the 1923 statute pro-

vides, and by the payment of neither assessment may the owner avoid the effect of the lien of the other assessment; and if he ignores the neglected assessment sufficiently long, loss of his title may well result. But we are not here concerned with the status of the fee owner, for he paid neither assessment. As a consequence, and as we have seen, there was a tax sale as to each of the defaults, at neither of which were there bidders. In further consequence, tax sale certificates of purchase based on the defaulted general levies were issued to the county, and like certificates based on the defaulted special levies, were issued to the town. Subsequently, the county assigned the certificates it held to plaintiff in error, upon which tax deeds were issued, as already stated, while the town assigned its certificates to defendant in error, who has interposed them as liens on plaintiff in error's tax title to the property involved.

As already we have indicated, only so long as title continues in the owner of the property or his assigns, could contest of the nature here arise to plague. Likewise, as is simple, payment of both levies would eliminate the possibility of such a controversy. Also, if the taxpayer discharges one of the levies, but omits payment of the other, still there would be an absence of conflicting interests predicated as here. Only when the taxpayer has defaulted as to both assessments, as here, and one of them has progressed to tax title state, also as here, does the relative dignity of the two levies become an issue and require determination. At any time prior to issuance of tax deed, parties interested in the other levy, as seems reasonable, would be entitled to redeem from the one on account of which tax deed execution has become imminent. Until such deed, the statutory equality of the two levies, and their perpetual life, as liens, continues. But when tax deed has issued, and particularly when it is based on defaulted general levies, all as here, we think the statute which makes both levies perpetual and on a par, comes into conflict with pro-

visions of the Constitution, quoted above, and the special improvement lien is as one "foreclosed" and wholly lost. Abundant statutory authority, all enacted in the spirit of the Constitution, attends the steps taken which culminated in plaintiff in error's tax deed based on defaulted general levies. There was regularity throughout, as adjudged below, and not challenged on review, and in such circumstances plaintiff in error's status is that of owner of a "new title" to the property involved. *Henrylyn Irrigation District v. Patterson,* 65 Colo. 385, 176 Pac. 493. The title on which defendant in error had a lien no longer exists. It yielded its life simultaneously with the passing of the fee of its dependence.

We are not a little concerned by the provisions of section 38, article V, of the Constitution, which, although not called to our attention by counsel, also seems to operate adversely to the lien claimed by defendant in error. It reads: "No obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the general assembly, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury." See, discussion by Justice Burke in *Burton v. Denver;* 99 Colo. 207, 61 P. (2d) 856. Justice Burke also in that case adverts to the "foreclosure of a superior tax lien," and the effect thereof, and cites *Bennett v. Denver, supra.* In Oklahoma the Supreme Court has held that a similarly worded provision of its Constitution comprehends the protection of general tax levies from legislation calculated to make such levies secondary liens. *Board of Com'rs v. Commissioners of Land Office,* 125 Okla. 287, 257 Pac. 778; *Nelson v. Pitts, Treas.,* 126 Okla. 191, 259 Pac. 533.

The general views on the subject of the relativity of the two assessments are learnedly stated in the authorities, from a few of which we quote, as follows: "A gen-

eral advalorem tax upon real property lies, generally speaking, at the foundation of the tax structure, and its paramount rank is in concept well near traditional." 51 Am. Jur., p. 887, §1016. "It is a recognized principle of law that taxes for general governmental purposes, lawfully imposed by the state, are paramount to all other demands against the taxpayer, although the statute imposing the tax does not expressly declare such priority. This rule rests upon public policy and necessity. Civil government cannot exist or be maintained without revenues, and taxes levied by the state for its support are founded upon a higher obligation than other demands. It is essential to the dignity and power of the sovereign state that taxes levied by it be promptly collected without fail." *Robinson v. Hanson,* 75 Utah 30, 282 Pac. 782. "It must be conceded that a general tax which has primarily for its object the support of the government whereby the government may exist, and lives and property may be protected and the pursuit of happiness guaranteed, is of great dignity and more importance than a tax bill issued for public improvements. * * * We can subsist without the special tax, but no civilized government could be organized and maintained without the general tax. So we conclude that the general tax being first in vital importance should be allowed first place in the means of payment." *Missouri Real Estate & Loan Co. v. Burri,* 202 Mo. App. 242, 216 S.W. 570. "As a corollary to the above proposition," says the Supreme Court of California, "it may be stated that every presumption is against the legislative intent to prefer the lien of special assessments to those of general taxes. In re Dancy Drainage Dist., 199 Wis. 85 [225 N.W. 873-876], the court says: 'We shall not attempt to review the authorities bearing upon this question, because in our view the lien for general taxes is of a distinctly higher order than the lien of any special assessment, and we should not construe any statute as giving precedence to the lien of any special assessment over the lien of general taxes in the

absence of a plain legislative command.' It may also be noted that in the absence of clear statutory provisions to the contrary a general tax lien is not only superior to an assessment lien but a deed executed in the enforcement of the general tax lien will destroy the assessment lien and, conversely, a deed excuted in the enforcement of an assessment lien will not extinguish a general tax lien." *La Mesa, Lemon Grove & Spring Valley Irr. Dist. v. Hornbeck,* 216 Cal. 730, 17 P. (2d) 143. "Tax liens may, however, in the very nature of things, be extinguished in other ways than by actual payment thereof in cash into the treasury; such, for instance, as the foreclosure of a superior tax lien, and this is a species of payment." *Burton v. Denver, supra.*

As already we have emphasized, so long as the fee title to the lands involved continued as when the levies were made, neither lien outranked the other. In other words, such owner, and his grantees as well, was bound by one quite as effectively as by the other; only by the payment of both could he be relieved from the visitation thereof; and continued nonpayment of either, or both, potentially would entail loss of title. Here, the taxpayer paid neither assessment, and there were tax sales as to each thereof, that for general levies in due course, and for the special levies thirteen years after the time of default. Bondholders interested in the special tax levies could have, but did not, redeem from the tax sales conducted in the interest of the general levies. In the meantime—and years intervened—the state, the county, the town, the school district, all dependent on the collection of general levies, constitutionally to be imposed on all properties, not excluding those involved here, suffered the impairment necessarily resulting. In 1941, the county, holding the tax sales certificates of purchase issued because of the defaulted general levies, despairing of redemption by the owner or the bondholders, proceeding in accordance with statutory enactment, sold and assigned the certificates to plaintiff in error, which, like-

wise proceeding according to statutory authority, applied for tax deeds, caused requisite notice to be given, and at the time fixed by law therefor, the owner of the property and the bondholders still omitting to make redemption, obtained tax deeds in legal course. By the steps indicated, and only so, were the responsible public authorities enabled to restore the property to the assessable basis required by the Constitution. Out of the process, as we have seen, there came a new title. *Henrylyn Irrigation District v. Patterson, supra.* But the bondholders (defendant in error in his evidence, but not in his pleadings, claims to be acting in their behalf) say that by virtue of the special tax levy made in their interest in 1924, and which they have not protected by redemption from sales made because of defaulted subsequent general levies, their lien continues notwithstanding. Thus one animal, if the illustration may be allowed, which cannot eat the hay, by lying thereon prevents the animal which would eat it from doing so. We cannot think legal justification attends. So long as it is legally possible to do so, both liens should be prosecuted, but when in the interest of making every unit of real property bear its constitutional proportion of general tax burdens, and which, in the circumstances here the special tax liens invoked, if sustained, would effectually thwart, then, as we think, the Constitution operates adversely thereto.

We are constrained to add, and are comforted therein, that the situation here is not of frequent occurrence. In most instances the owners of the various properties pay both assessments. The underlying difficulty in this controversy, as is fairly inferable from the record, is, that, the value of the several lots involved does not warrant the tax burden born of the two levies. Otherwise, firstly, the owner would not have defaulted in relation thereto; secondly, the bondholders would have been moved to redeem from the general tax sales; thirdly, wise gentlemen who speculate in delinquent tax

operations would have moved to the solution in the manner characteristic of their calling. We strongly suspect, and the record supplies hints thereof, that the whole sidewalk district was over appraised by the bond purchasers, and the taxpayers, not being liable other than as .to the extent of the property upon which the assessments were made, elected to forfeit it. In any event, and whatever error of judgment there was, if any, and by whom, the steps taken by the proper officials to restore the lands involved to the general tax roll are in consonance with the purpose of the Constitution, and those whose dependence is upon the special improvement levies may not circumvent it.

 Finally, defendant in error is not competent to appear here in opposition to plaintiff in error. The basis of his claimed right to contest plaintiff in error's suit is that he is the assignee of certain special improvement tax sale certificates which originally ran to the town responsible for their issuance. The purported assignments are by the town clerk, clearly without authority in the premises. The statute providing for assignment of special tax sale certificates held by a town, as here, is that the town treasurer make sale and assignment thereof, and he may do so only "at their face value, with all interest and penalties accrued, * * * and the proceeds credited to the fund created by ordinance for the payment of such assessments." '35 C.S.A., c. 138, §101. That section is the "only authority for disposition of the certificates held by the town." *McMillan v. Commissioners,* 113 Colo. 387, 157 P. (2d) 146. Moreover, defendant in error did not allege that he paid for the certificates according to the requirements of the statutes, nor that he paid anything for them. There was no testimony to that effect. In consequence, he was, and is, without material interest in the controversy.

In so far as the judgment decreed a lien on the property involved in behalf of defendant in error, let it be reversed. The trial court will amend its former judg-

ment so as to include defendant in error among those against whom plaintiff in error's title is quieted.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE ALTER and MR. JUSTICE LUXFORD concur. MR. JUSTICE HAYS concurs specially. MR. JUSTICE JACKSON and MR. JUSTICE STONE dissent.

MR. JUSTICE STONE dissenting.

Plaintiff based its title on several treasurer's deeds, each separately conveying a portion of the property, all issued to plaintiff on August 14, 1941, pursuant to sale of the property for general taxes, of several different years extending from 1929 to 1935, each of such certificates bearing endorsement thereon of subsequent general taxes to and including the year 1940. Defendant claims a lien by virtue of tax sale certificates issued to defendant's assignor, the Town of Mountain View, on sale of the property in 1937 for default in 1928 or prior years in the payment of special sidewalk assessments which became a lien in 1924.

The court in the majority opinion holds that the sales for general taxes in 1935 or prior years, pursuant to which treasurer's deeds were issued to the several properties involved in 1941, extinguished the prior lien of special assessments under which the properties were sold in 1937 to defendant's grantor.

Under the revised statutes of Colorado, 1868, general taxes upon real property were made a perpetual lien without reference to other forms of taxation. In 1893, by amendment to the charter of the City of Denver, the legislature provided for a system of public works therein and the levying of special assessments upon the property benefited, and further provided that all assessments made in pursuance thereof should be a lien against each tract of land "and shall have priority over all other liens except general taxes." This was followed by chapter 151, S. L., 1899, which was a comprehensive act to pro-

vide for the construction of local improvements in cities other than Denver, to be paid by special assessments, and section 23 of that act provided, inter alia, that "all assessments made in pursuance of this Act shall be a lien in the several amounts assessed against each lot or tract of land, and shall have priority over all other liens excepting general taxes." .

In 1910 the case of *City and County of Denver v. Keeler,* 48 Colo. 54, 108 Pac. 998, was decided by this court. Therein Keeler, claiming title under a tax deed issued in 1904 on defaulted general taxes of 1899, sought to quiet title to property in Denver as against the city which claimed a lien by virtue of certificate issued in 1901 on sale for defaulted special assessment levied in 1894. The court held that under the provisions of the Denver charter, which made all assessments a prior lien excepting general taxes, the lien of special assessments was subordinated to those of general taxes.

Following the decision in *City and County of Denver v. Keeler, supra,* as to the lien of special assessments, our statute covering general taxes was amended, by chapter 197, section 3, S. L. 1911, to provide as to the perpetual lien of general taxes that, "Such liens shall have priority over all other liens except such liens as then exist which have been created by special assessments for public improvements." Under statutes so worded, arose the case of *Bennett v. Denver,* 70 Colo. 77, 197 Pac. 768, wherein Bennett, who claimed title under a treasurer's deed issued on a sale for general taxes in 1915 for defaulted 1914 taxes, brought action to quiet title against the City and County of Denver which claimed liens by virtue of unpaid special assessments on the property made in 1909 and 1913. The court there held that the sale under the later lien of the general taxes cut off the earlier lien of the special assessments.

The rule of the Bennett case was followed in *Fishel v. Denver,* 105 Colo. 120, 85 P. (2d) 1, which involved an identical situation of lien held under the provisions of

the Denver charter asserted against title held under tax deed on default in subsequent general taxes, and it was again followed in *Boulder v. Plains Co.*, 75 Colo. 86, 244 Pac. 233, where Boulder claimed prior lien of special assessment under the 1899 statute of identical wording with that of the Denver charter.

The Bennett case was decided by this court in 1921. At the next regular session of the legislature there was enacted a new local improvement statute, being chapter 180, S. L. 1923, wherein it is provided in section 19 that all assessments made in pursuance of that act shall "constitute a perpetual lien on a parity with the tax lien for general state, county, city, town or school taxes, and no sale of such property to enforce any general state, county, town or school tax or other lien shall extinguish the perpetual lien of such assessments," and this statute is now before us for the first time for construction.

The statutes under which the conflicting claims of priority between general tax and special tax have heretofore been decided, provided that the general tax should have priority except for the lien of special assessments and that the special assessments should have priority over all liens excepting general taxes. It was held in the Bennett case and subsequent cases that under such reciprocal statutory provisions, Colorado should follow the general rule as to taxes, and that a tax deed issued pursuant to sale for default in payment of a subsequent general tax cut off the prior lien of a special assessment.

The 1923 act constitutes a new declaration by the legislature as to the priority of lien of special assessments which was not involved in any of the cases heretofore mentioned. While the statute considered in the Bennett case declared that special assessments should have *priority* over all other liens *excepting* general taxes, the 1923 act here under consideration provides that the assessments shall constitute a perpetual lien *on a parity with* that of general taxes, and apparently having in view the rule declared in the Bennett case that deed

under sale for delinquent general tax cut off the lien of a prior special assessment, the new statute goes further than merely to declare a parity. It specifically says that no sale of the property to enfore any general tax shall extinguish the perpetual lien of the assessment.

In order to make unmistakeable the scope of legislative intent, it has been further provided in subsequent statutes authorizing the issuance of tax deeds to counties, and the disposition by sale or lease of land so acquired, that the proceeds of such sale or lease shall be apportioned between the general taxes and special assessments and that noting in those statutes shall be construed to affect in any manner or degree whatsoever the lien of any special assessment to which such real estate and the conveyance thereof by the county treasurer is subject by statutes of this state (S.L. 1939, .p. 486, §4; S.L. 1941, p. 649, §4). The construction of these statutes becomes of particular importance because of the fact that the same phraseology as to parity of lien has been adopted in the statute creating the Moffat Tunnel Improvement District and in the Water Conservation District Act. Under such plain legislative mandate, for this court still to assert the priority of the lien of the general tax over the lien of a special assessment creates uncertainty and confusion as to all these statutes, and constitutes usurpation by the court of the legislative function, and the abrogation to ourselves of a power we do not possess, unless we are compelled thereto by a constitutional prohibition against such legislation. Is there such prohibition?

There is no common-law rule which makes the levy of taxes of its own force a lien on the property of the taxpayer. In the absence of constitutional restrictions, the liens, both of general taxes and of special assessments are dependent upon the statute. *Board of County Commissioners v. Bench Canal Drainage District,* 56 Wyo. 260, 108 P. (2d) 590; *State ex rel. v. Passmore,* 189 Okla. 232, 115 P. (2d) 120; 51 Am. Jur., p. 881, §1010. In

the absence of statutory provision concerning priority between general tax liens and liens for special assessment, the general tax lien is usually held superior. *Robinson v. Hanson,* 75 Utah 30, 282 Pac. 782.

In *La Mesa, etc., Irr. Dist. v. Hornbeck,* 216 Cal. 730, 17 P. (2d) 143, the court said that, "every presumption is against the legislative intent to prefer the lien of special assessments to those of general taxes," and quotes from *Re Dancy Drainage Dist.,* 199 Wis. 85, 225 N. W. 873, that, "In our view the lien for general taxes is of a distinctly higher order than the lien of any special assessment, and we should not construe any statute as giving precedence to the lien of any special assessment over the lien of general taxes in the absence of a plain legislative command." Yet, notwithstanding this declaration of presumption, the California court in the La Mesa case, after citing pertinent statutes and a decision of its appellate court, said: "From the above authority and upon our construction of the section we may now safely conclude that under our system of taxation liens in favor of county and municipal corporations and special assessments, under the authority of state agencies for public purposes, are all on an equality. By this is meant that in case of delinquency a deed to any one of these agencies for such taxes will not obliterate the existing liens on the property in favor of any or all of the others * * * ."

A like conclusion was reached in *Magee v. Whitacre,* 60 Nev. 208, 106 P. (2d) 751. "The question here is whether or not the Legislature can constitutionally provide a lien for irrigation district assessments and make it equal to the general tax lien. We hold that it can * * *. It is evident that the Legislature has the undoubted power to say whether taxes shall constitute a lien, in the first instance, and what priority it shall have, in the second instance, and may provide that taxes shall not create a lien at all." And in *Walton v. City of Portales,* 42 N. M. 433, 81 P. (2d) 59, in construing a statu-

tory provision very similar to the one here involved, the court said that the language used by the legislature "is so clear and unambiguous that we are not left in doubt that it was the intention of the legislature to elevate special assessment liens to a rank of equal dignity with liens for general taxes," and the statute was held valid.

In *Board of County Commissioners v. Adams,* 154 Kan. 233, 117 P. (2d) 760, similar legislation was sustained as constitutional; that the general tax lien and the lien created by special tax bill were concurrent and that upon sale of the premises for default in both taxes if the proceeds were insufficent to discharge the liens in full, then after the costs were paid, the money received shall be divided pro rata between the two liens.

In *Board of Commissioners v. Wewoka,* 191 Okla. 233, 127 P. (2d) 826, the court sustained as constitutional a statute providing that special assessments for street improvements should be coequal with the lien of the other taxes, and that upon sale for defaulting liens, the property should be sold and the proceeds divided pro rata between the county and the bondholders. Particularly urged was the constitutional provision that the legislature should have no power to release or extinguish, in whole or in part, the indebtedness of obligations of any individual to the state or any county or other municipal corporation.

In *Gould v. St. Paul,* 120 Minn. 172, 139 N.W. 293, and *Midway Realty Co. v. St. Paul,* 124 Minn. 296, 145 N. W. 24, statutes were sustained and construed holding the lien of special assessments on a parity with that of general taxes and the purchasers under each were held to be tenants in common of the property.

The court in the majority opinion infers that the tax parity provided for by our legislature violates section 38, article V, of the Constitution providing that, "No obligation or liability of any person * * * shall ever be * * * released or postponed, or * * * extinguished except by payment thereof into the proper treasury." It may be

answered that a tax on real estate in Colorado is not an obligation or liability of any person, but merely a charge against the property. In *Burton v. Denver,* 99 Colo. 207, 61 P. (2d) 856, we specifically held that section 38 did not prevent the release and extinguishment of a tax lien, entirely without payment, upon issuance of an erroneous certificate of the county treasurer that the tax had been paid, and that under a like constitutional provision, the New Mexico court in *Walton v. City of Portales, supra,* held that a similar statute to that here involved did not offend against a like constitutional provision. "It is held, however, that a tax lien is not an obligation or liability within the meaning of a constitutional provision preventing the release of obligations of liabilities to the state." 51 Am. Jur., p. 885, sec. 1014.

Section 3, article X, which provides that all taxes shall be uniform upon the same class of subjects and shall be levied and collected under general laws, does not prohibit special assessments (*Denver v. Knowles,* 17 Colo. 204, 30 Pac. 1041) and has no application to the question of liens. "Uniformity of taxation goes to the act of the assessing body when the tax is imposed. It has no application to delinquent certificates that have reverted to the State for nonpayment of taxes." *State ex rel. v. Culbreath,* 140 Fla. 634, 192 So. 814. A statute is not discriminatory when the same means and methods are employed alike to the persons or property composing the class so that the law operates on all similarly situated. *Kocsis v. Chicago Park District,* 362 Ill. 24, 198 N. E. 847, 103 A. L. R. 141.

If I apprehend the reasoning of the court as expessed in the majority opinion, it holds the parity statute to be violative of section 8, article X, of the Constitution, which provides: "No county, city, town or other municipal corporation, the inhabitants thereof, nor the property therein, shall be released or discharged from their or its proportionate share of taxes to be levied for state purposes." The Illinois constitution has a similar pro-

vision, in its article IX, section 6, with the additional clause, "nor shall commutation for such taxes be authorized in any form whatsoever." In *People v. Taylorville Sanitary District*, 371 Ill. 280, 20 N. E. (2d) 576, the court held valid a statute making the lien of special assessments on a parity with those of general taxes, but the particular constitutional objection here raised was not specifically considered. In *Schreiber v. County of Cook*, 388 Ill. 297, 58 N.W. (2d) 40, the court sustained the validity of legislation providing for the sale of property for tax delinquency, the prorating of the proceeds between general taxes and special assessments, and the extinguishment of the lien for the balance of taxes unpaid as against the specific contention that it violated the constitutional provision against release, discharge, or commutation of taxes. The court there said: "The sale of land to satisfy a tax lien is an extinguishment of the lien, which becomes merged in the title purchased. Therefore, it is neither a release nor a commutation. A release is a discharge by voluntary act. An extinguishment of a lien is a discharge by operation of law." And the court concluded that the constitutional provisions prohibiting a release or commutation of taxes, and of duties, liabilities and obligations due the state or a municipality, refer to voluntary releases and commutation as distinguished from reductions resulting from sales under judicial decrees and judgments. Again, in *Village of Westchester v. Holmes*, 390 Ill. 436, 62 N. E. (2d) 410, it is said: "We have held that the liens of general taxes against real estate and of special assessments levied by cities or other municipalities are on a parity and equal, with no preference or priority in any one over the other.

As we understand the argument implicit in the contended bar of article X, section 8, it seems to be that in the event the special assessments are given a parity with the general tax, then if the combined taxes should become so great that there would be no bid for the property at tax sale (which is not the situation here) and as

a result the property should be struck off to the county and thereafter sold for less than the total amount of taxes and costs, the amount so ultimately recovered must be prorated between the special assessments and the general tax with the result that the state would not receive as large a share of the amount recovered as it would have received had proration not been required. Let us consider this contention in the light of the constitutional provision.

The evil sought to be remedied by these similar restrictions found in the Illinois, Idaho and Colorado Constitutions, as well as those of several other states, was the attempted release of state taxes of an entire taxing unit for the purpose of financial assistance to such unit, *Raymond v. Hartford Life Ins. Co.*, 196 Ill. 329, 63 N.E. 745; as, for instance, granting a charter exempting the inhabitants of a town from state taxes for a term of years so that an amount equal to the state levy could be levied against the property within the city for the purpose of building a levee. *People ex rel. v. Barger*, 62 Ill. 452. We believe it is apparent that they are not violated by the statute here challenged for several reasons:

First. The constitutional restriction applies only to a release or discharge from taxes by specific legislative enactment and not to an extinguishment of the lien by operation of general law as here provided for. *Marker v. Scotts Bluff County*, 137 Neb. 360, 289 N. W. 534; *Schreiber v. County of Cook, supra.*

Second. The restriction applies to the release or discharge from a proportionate share of liability of all the property of a county or municipal corporation, while under the act we are here considering the tax lien is extinguished only on the particular parcels which, for want of a bid at a tax sale, are struck off to the county and are thereafter resold for less than the full amount of taxes.

Third. Notwithstanding the restriction, under our statutes long in operation and unchallenged, our county,

school district and city taxes are held to have a parity of lien with state taxes. If for want of a bid at tax sale, any property is bid in by the county and resold for less than the total taxes due, the amount is prorated among the state, county, school district and city taxes so that the state only gets its pro rata share. If the property is situate within a city, the state must pro rate with the city so that the state obtains a smaller proration of the amount of tax paid than would be the case if the property were not within the limits of a city. Particularly in case the city in which a property is situate has constructed sidewalks, sewers or other improvements to be paid for by general obligation bonds whereby payment of principal and interest of these bonds is made through general taxation by the city, then in case of tax loss the state tax must pro rate with the city tax which includes the cost of the improvements, whatever part of the taxes may ultimately be recovered. If such parity statutes are not repugnant to the constitution, what is the offense of the statute providing that the lien of special assessments also shall be on a parity with that of general taxes.

Fourth. The rule of stare decisis applies. It has been repeatedly held by our courts that the liens both of general taxes and of special assessments in Colorado are creatures of statute. "Under some conditions taxes are a lien on realty, but they have this force because of the enactments. Legislation directly charging the realty is prerequisite to its existence; without it taxes are not thus collectible, either as against the owner or an encumbrancer." *Gifford v. Callaway*, 8 Colo. App. 359, 46 Pac. 626. "Tax lien is statutory. A tax levied and assessed upon specific property is not a lien on that or any other property of the owner unless expressly made so by statute, and an intention to this effect must be clearly manifested in the statute, as the lien will neither be created by implication nor enlarged by construction." Quoted with approval from 37 Cyc. 1138 in *Thomas v. Patterson*, 61 Colo. 547, 159 Pac. 34. "It is well settled

that a tax does not become a lien upon real estate unless by express legislative action." *Commissioners v. Whitt,* 74 Colo. 129, 219 Pac. 217. In *People v. Denver,* 85 Colo. 61, 273 Pac. 883, we upheld the act of the legislature making an excise tax imposed on the sale of gasoline a prior lien over that for general taxes, saying, "The question of tax liens is for legislative determination. The legislature may or may not make taxes a lien upon property; if it does not do so, no lien exists. It also may determine the priority of tax liens." In *Burton v. Denver,* 99 Colo. 207, 61 P. (2d) 856, we considered the statutes providing in substance that the county treasurer shall, upon request and payment of his fee, certify in writing the taxes due on any parcel of real estate and that such certificate shall be conclusive evidence as to such taxes; and we there held that, notwithstanding article X, section 8 of the Constitution, the general assembly could and did provide for extinguishing the lien of a tax upon such treasurer's certificate. Surely, if the legislature has the power so to extinguish the lien of the general tax, without its being paid, it has the power to provide for the lien parity of special taxes therewith. In the words of the New Mexico court in *Walton v. Portales, supra,* "If the legislature has the power to discharge the lien for general taxes, surely it would have the power to waive the superiority of the lien thereof over other liens." Again, in *People ex rel. v. Letford,* 102 Colo. 284, 70 P. (2d) 274, in determining the validity of the Northern Colorado Water Conservancy District organized under the provisions of the Water Conservancy Act, we said, "Section 22 provides that all taxes and assessments are, until paid, a perpetual lien on a parity with the tax lien of general, state, county, city and town taxes, thereby importing a priority over other liens of all kinds. Section 19 creates a 'perpetual tax lien' for Class D assessments. Relator does not seriously question these provisions as they pertain to the general ad valorem tax and they appear not subject to challenge."

Finally, it is a fundamental principle of construction that those who seek to overthrow a statute by reason of its repugnance to a constitutional provision must show the unconstitutionality of the act beyond all reasonable doubt. *Denver v. Knowles,* 17 Colo. 204, 30 Pac. 1041. Only clear and demonstrable usurpation of power will authorize judicial interference with legislative action. *People ex rel. v. Letford, supra.* No such plain and indubitable repugnance or usurpation is apparent in the statutes here involved. The determination of the wisdom of these enactments is of legislative, not judicial, cognizance and usurpation of authority when asserted by the court is more oppressive than when asserted by the legislature to the degree that relief by the people therefrom is more slow and difficult.

The majority opinion, in its concluding paragraph, as a further ground for reversal, determines that the defendant in error is not competent to appear in opposition to plaintiff in error, (1) in that the certificates under which he holds were assigned to him by the town clerk instead of by the town treasurer, and (2) in that he did not allege that he paid for the certificate in cash. These issues were not raised in the pleadings. The town and Sullivan, each by separate answer, alleged the assignment, and plaintiff's reply admitted Sullivan's claim by virtue of the certificates and made issue thereon that the certificates "have been cut off by the general tax certificates of the plaintiff herein." Neither were these issues raised at the trial. The assigned certificates were received in evidence without objection on either ground here held to avoid them and without testimony as to the nature or amount of the payment on their assignment. Nor were these issues raised in the specification of points to be considered by this court. The issue of the sufficiency of the assignment by the clerk was first raised in the brief of the plaintiff in error, and the question of the assumed insufficiency of payment was first raised in the majority opinion of this court.

There is an ancient, elementary and necessary rule that an appellate court may consider only issues presented to the trial court. These issues were not so presented. The one issue determined, the one issue raised, and the one issue to which testimony was addressed in the trial court was that of the lien of the special assessment certificates. For this court now to inject other issues, not so determined and not so raised and to which testimony was not addressed below, is novel procedure.

There is a further rule that in a quiet title suit plaintiff must stand on the strength of his own title, not on the weakness of that of defendant. As we said regarding plaintiff's title in such a suit in *Walters v. Webster,* 52 Colo. 549, 123 Pac. 952, "As his title depended entirely upon the trustee's deed, and it had been put in issue by the answer, it is clear that a judgment quieting title in him should not have been rendered, even though the defendant failed to establish title in himself." See also *Cooper v. Shannon,* 36 Colo. 98, 85 Pac. 175.

It must further be noted that Sullivan made no claim to personal ownership of these certificates. The unchallenged testimony was that he held the bonds on behalf of the bondholders, and that the certificates had been assigned to him as their representative for the purpose of determining their rights. The bondholders were the true parties in interest and the issue whether they should have been represented in this suit by the town, which upon sale and issuance of the certificates became in law their trustee, or by Sullivan, who regardless of the validity of the assignments, was by agreement between themselves and the town to be their trustee, seems to be the only issue involved. I cannot concur in reversal on such ground.

MR. JUSTICE JACKSON concurs in this dissent.

MR. JUSTICE HAYS especially concurring in part and dissenting in part.

I concur only in the conclusion reached by the majority as expressed in the court's opinion upon the single ground that defendant Sullivan has no interest in the property, and therefore cannot question plaintiff's title.

Section 101, chapter 138, '35 C.S.A. provides inter alia: "§101. At any sale by the county treasurer of any property for the purpose of paying any special assessment for local improvements made under the provisions of sections 65 to 104 of this chapter, in such city or town, the city or town treasurer having written authority from the ordering authority may purchase any such property without paying for the same in cash; and shall receive certificates of purchase therefor in the name of the city or town. The certificates shall be received and credited at their face value, with all interest and penalties accrued, on account of the assessments in pursuance of which the sale was made. *The certificates may thereafter be sold by the city or town treasurer at their face value, with all interest and penalties accrued, and by him assigned to the purchaser in the name of the city or town, and the proceeds credited to the fund created by ordinance for the payment of such assessments respectively.* Such assignments shall be without recourse, and the sale and assignments shall operate as a lien in favor of the purchaser and assignee as is provided by law in the case of sales of real estate in default of payment of general taxes." (Italics mine)

The above section provides the "only authority for disposition of the certificates held by the town." *McMillan v. Commissioners*, 113 Colo. 387, 157 P. (2d) 146.

From the evidence of the defendant's witness it appears that the assignments of the tax certificates from the town of Mountain View to Sullivan were not made in conformity with the above statute but were "turned over" to Sullivan as a "representative" of the bondholders "to determine their rights and attempt to collect what is due the bondholders." The defendant in his brief

admits that "Sullivan and Company owns them [the certificates] on behalf of the bondholders."

The town of Mountain View, under the statute, was trustee for the bondholders, and is liable to the latter for any damages resulting from a neglect of its mandatory duties as trustee. *Employers Mutual Ins. Co. v. Commissioners,* 102 Colo. 177, 78 P. (2d) 380; *Wangnild v. Town of Haxtun,* 106 Colo. 180, 103 P. (2d) 474; *Town of Haxtun v. Wangnild,* 109 Colo. 518, 127 P. (2d) 328.

The town of Mountain View cannot escape its obligations and duties as statutory trustee by assigning the certificates to another trustee. The assignments of the certificates by the town to Sullivan were ultra vires and void, and passed no title whatever to the latter, who having no interest, cannot question plaintiff's title. *Young v. Rohan,* 77 Colo. 70, 234 Pac. 694.

On all other points, I concur in the dissenting opinion of Mr. Justice Stone.