No. 16,103.

PUEBLO CONSERVANCY DISTRICT *v.* MOORE.
(210 P. [2d] 614)

Decided July 11, 1949.   Rehearing denied October 10, 1949.

Mr. CHARLES M. ROSE, for plaintiff in error.

Mr. JACK JENKINS, Mr. V. G. SEAVY, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE HILLIARD delivered the opinion of the court.

AN action by defendant in error, plaintiff below, to quiet title to real property, and particularly to extinguish certain special assessments made against the property involved by, and the cancellation of certificates of purchase issued to, plaintiff in error, who was defendant below, because of defaulted payments of such assessments through certain years. Plaintiff enjoyed favorable findings and judgment.

Plaintiff claims under a tax deed issued and recorded May 12, 1948, said deed having predicate on tax sales held December 14, 1931, for the nonpayment of general taxes for the year 1930, on the property involved. At the tax sale the property was struck off to Pueblo county, the situs thereof, and certificates of purchase

therefor were issued to said county. September 18, 1947, the county assigned the certificates to plaintiff, who, proceeding in manner and form not questioned, applied for, and was given, a tax deed, as already stated.

Defendant, a public corporation, while conceding the legality and general sufficiency of plaintiff's tax title, nevertheless contends that the property conveyed by the tax deed still is subject to the lien of special assessments which, defaulted, or otherwise, it had caused to be levied against the property.

■ There is involved the question of the relative dignity of general and special tax liens in an instance where there was default in payment of both levies, and where, as to the general levy, a tax deed had issued. In our most recent pronouncement on the question, we said, "our decisions are to the effect that holders of tax deeds issued pursuant to general levies enjoy title to the property described therein, freed from liens of special improvement tax levies, and certificates of tax sales, if any, issued because of defaulted payment thereof." *City Real Estate, Inc. v. Sullivan,* 116 Colo. 169, 180 P. (2d) 504. In the opinion there we cited, and briefly reviewed, Colorado cases which we believed to be pertinent, as follows: *Fishel v. Denver,* 105 Colo. 120, 90 P. (2d) 1; *Boulder v. Plains Co.,* 75 Colo. 86, 224 Pac. 233; *Whitehead v. Desserich,* 71 Colo. 327, 206 Pac. 384; *Bennett v. Denver,* 70 Colo. 77, 187 Pac. 768. Unless, therefore, the situation here materially differs from the sum of the bases of the foregoing decisions, and the learned trial court was not of that view, the precedents point the way.

Basically, plaintiff in error relies on S. L. 1922, page 11 (4 C.S.A. '35, chapter 138, page 579.) Sufficiently stated, that was, "An act to provide for the organization of conservancy districts and to define the purposes and powers thereof." Concededly, plaintiff in error was regularly organized pursuant thereto, and, proceeding otherwise in accordance therewith, constructed vast

works at a cost of some four and one-half million dollars, for which the district issued its general obligation bonds, not questioned in any particular. By the terms of the act, plaintiff in error was authorized to levy two kinds of taxes, that is to say, ad valorem on all the property within the district of its authority, and special assessments according to benefits against parcels of land within the district, by units of ownership. Approximately fifty-one per cent of the whole sum was to be paid out of ad valorem levies, and forty-nine per cent out of special levies. This inquiry has particularly to do with certain real property against which plaintiff in error had levied a special assessment, wholly defaulted. The calculation by the district was that by virtue of ad valorem levies there would be realized the sum of $2,791,200, and by special levies against units of land the sum of $2,676,976, or a total of $5,468,176, a sum safely in excess of that required to discharge the bond issue.

The property involved was subjected to ad valorem levy by plaintiff in error, as well as a special levy as a unit, as already stated. What sum per annum the ad valorem levy on the property involved would produce does not appear, but since the special levy thereon was $8.86 per annum, probably the ad valorem levy contemplated a sum not greatly more, or, say in the ratio of 51 to 49. But whatever it was, and whatever other ad valorem levies there were by the state, the county, the school district, other taxing entities, for the year 1930, the owner of the property defaulted as to all of them. It is clear that thereafter plaintiff in error collected nothing by virtue of either of its levies against the property involved, and for the like period the state, the county, the school district, others, realized no returns thereon pursuant to their several ad valorem levies. Neither plaintiff in error in representation of the bondholders, nor the latter in their own right, redeemed from the tax sale for nonpayment of the general levies by the several entities legally making them. Prac-

tically speaking, justification attended such failure. The bondholders' stake in the property involved was of slight importance (considerably less than $200.00 for the whole period), as the figures appearing make manifest, and the margin of safety comprehended in the right to make ad valorem levies on all the vast property values of the entire district, plus special levies on all properties of value justifying both levies, relieved from any feeling of potential concern. That which was evident in the City Real Estate case, is not less so in this inquiry. We observed there, that, "The underlying difficulty * * * is, that, the value of the several lots involved does not warrant the tax burden born of the two levies. Otherwise, firstly, the owner would not have defaulted in relation thereto; secondly, the bondholders would have been moved to redeem from the general tax sales; thirdly, wise gentlemen who speculate in delinquent tax operations would have moved to the solution in the manner characteristic of their calling."

The stated situation here obtained for years, the property involved yielding nothing in the way of taxes on any levy whatever. In the absence of redemption from the tax sales by the owner, the bondholders, or other, the county proceeding in due course, took steps to work restoration of the property to a taxable status. It discounted its tax certificates in that interest to the extent that a stranger to the title felt justified in making purchase thereof, who, as is conceded, thereafter took the required steps to ripen the certificates into a tax deed. By that process the purchaser became vested with title to the property, wholly freed from earlier tax and other liens, not excluding special "tax levies, and certificates of tax sales, if any, issued because of defaulted payment thereof." City Real Estate case. The language just quoted from the cited case does not differ in conception from the rule announced in many Colorado cases of earlier origin. Otherwise, of course, there would be no market for tax titles. When property is so lacking

in value that the owner will not pay the general ad valorem levies *and* special improvement levies, and bondholders interested in the special levies are not moved to redeem from tax sales because of defaulted general levies, the county is justified in taking "steps to restore the lands involved to the general tax roll," precisely as was done here, "and those whose dependence is upon the special improvement levies may not circumvent it." City Real Estate case. As the result of any other course of procedure, futility would attend as to all levies.

The 1922 act, in so far as the levy and collection of special assessments attend, and the dignity thereof in comparison with general levies in the circumstances here, does not differ from acts considered in our earlier decisions, in relation to which we resolved adversely to the contention of plaintiff in error. The trial court sensed the controlling rule, as we are persuaded, and applied it wisely. Moreover, as we have seen, the bondholders; and only in their behalf is plaintiff in error properly concerned, are amply protected; but if it were otherwise, restoration of their alleged special assessment lien on land that does not justify the payment of taxes in the situation appearing, plus plaintiff in error's special levy, evident to all concerned, including the bondholders, will not add to their fortunes.

Let the judgment be affirmed.

Mr. Justice Jackson, Mr. Justice Stone and Mr. Justice Hays dissent.